116 N.J. Super. 471 (1971)
282 A.2d 775
HARRY J. STANCHAK, PLAINTIFF-APPELLANT,
v.
CLIFFSIDE PARK LODGE NO. 1527 LOYAL ORDER OF MOOSE, INC., AND DANTE CAPORALE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 1971.
Decided October 20, 1971.
*474 Before Judges CONFORD, MATTHEWS and FRITZ.
Mr. William A. Fasolo argued the cause for appellant (Mr. Milton T. Lasher, attorney).
Mr. Martin J. Loftus argued the cause for respondents (Messrs. Loftus, Schauer & Cuozzi, attorneys).
The opinion of the court was delivered by CONFORD, P.J.A.D.
This is an action by a broker for damages for breach by defendant fraternal organization ("Lodge") of an agreement between them for him to secure a purchaser of the Lodge property at a stated price. The most substantial defensive issue raised below was whether defendant in fact engaged plaintiff for the stated purpose. The trial court, sitting without a jury, found for defendant on that issue, and added other grounds for entering judgment against plaintiff.
From the entirety of the proofs the following facts appear. Plaintiff had been engaged by Dyn Manufacturing and Packaging Corp. ("Dyn") to find it a building for expansion of its activities. Hearing that defendant's nearby lodge building might be for sale, Dyn had plaintiff approach one Caporale, secretary of the Lodge, on the subject. The latter invited plaintiff to a meeting of the executive committee to present his proposition. According to the minutes of an *475 April 28, 1969 meeting of that committee, Caporale reported having been approached by "Real Estate Broker * * * Stanchak quoting he has a buyer for our premises," and Caporale was instructed to advise plaintiff to appear at the May 5 meeting to submit his proposal.
The pertinent portion of the minutes of the May 5 meeting, certified by Caporale, read as follows:
Harry A. Stanchak Cliffside Park Real Estate Broker was admitted to explain his attendance he quotes on previous by [sic] verbal remarks he had a buyer if we were in the market of selling and his price was 40 to 45,000 dollars, the Officers set [sic] that if a sale was in the making the price would be at least 60,000 dollars plus Brokers fees. He was advised that the proposal would be studied and he would be advised within the next few days. Stanchak left about his business and Officers resulmed [sic] their Business. Secretary was then advised to advise that the sale price would be 60,000 dollars plus Brokers fees if a sale was consummated.
The substance of the foregoing was supported by testimony of plaintiff. Caporale testified, on cross-examination, in reference to the May 5 meeting.
Q. They [the Lodge committee] were ready to sell it for $60,000 provided Stanchak was paid commissions by someone other than the Moose? A. Well, at that time that's what they decided, yes.
Presumably executing the instructions given him at the May 5 meeting, Caporale on May 13, 1969, on the letterhead of the Moose organization, wrote Stanchak as follows:
 RE: Property
 220 Walker St.
 Cliffside Park, N.J.
Dear Sir: Confirming discussion with you on Monday May 5th regarding sale of the above, after a meeting of all the Officers in the past few days, I am directed to submit the following,
 Rock bottom price is $60,000.00 plus necessary
 fee due you.
 Very truly yours,
 /s/ Dante Caporale
 Dante Caporale,
 Secretary.
*476 On receipt of the letter Stanchak telephoned Caporale to request an opportunity to explore the proposal, which was granted, and then communicated with and received authorization from the president of Dyn, Mr. Erle, to notify the Lodge of his willingness to buy on the terms stated. He agreed further to pay Stanchak a $2,000 brokerage fee. Thereupon, on May 15, 1969, Stanchak wrote the defendant, attention of Caporale, as follows:
Gentlemen:
I received your letter of May 15, 1969, in which you state the price for the property at 220 Walker Street, Cliffside Park, is $60,000., plus necessary fees due me.
This is to confirm my telephone conversation with Mr. Caporale, Secretary, on May 15, 1969 at 11:45 AM and also at 1:25 PM, that my client, Mr. Walter E. Erle, President, of the Dyn Mfg. & Pkg. Corporation of the Dyn Bldg. 281-87 Palisade Avenue, Cliffside Park, N.J., has agreed to pay the price you requested in your letter of May 13, 1969, of $60,000.
Mr. Caporale informs me that the Honorable Walter H. Jones of Hackensack, is the attorney who represents your Lodge.
I requested Mr. Walter E. Erle to have his attorney contact Mr. Jones to proceed with this matter.
 Thanking you for your cooperation, I am,
 Very truly yours,
 Harry J. Stanchak Jr.
Stanchak testified he telephoned the office of Mr. Jones and was told the contract of sale was being drawn. Sometime thereafter, however, Caporale told him "the deal is not being consummated," and a secretary in the Jones office, in the absence of the associate handling the matter, confirmed that fact to Stanchak. The "factual and legal contentions" of defendant, as set out in the pretrial order, state: "Thereafter [after the sending of the May 13, 1969 letter] it was determined [by the Lodge] that the difficulty in obtaining new premises for lodge meetings made it inadvisable to sell no matter how much money was offered."
In July 1969, concededly to fortify plaintiff's legal foundation for the present claim, Erle on behalf of Dyn signed a proposed form of contract of sale and purchase of the property *477 for $60,000, specifying Stanchak as the owner's agent and incorporating the purchaser's agreement to pay Stanchak a $2,000 commission. This form of agreement was not submitted to the Lodge for signature, obviously because the latter had already unequivocally signified it had changed its mind about selling.
Erle testified that Dyn had the necessary finances and had been fully prepared to buy the property for cash in the amount of $60,000, as well as to pay the commission of $2,000, and was still ready to do so at the time of the trial in December 1970.
In rendering decision for defendant, the trial judge stated his reasons and findings: (1) the letter from the Lodge of May 13, 1969 did not constitute an authorization of plaintiff as broker under the brokerage statute of frauds, N.J.S.A. 25:1-9. The fact that the purchaser was to pay the commission relieved the seller of any obligation under the letter; (2) it was incumbent on the purchaser to submit a contract of sale to the seller which it never did; (3) plaintiff never produced a purchaser ready, able and willing to buy on terms fixed by the owner as such terms were never agreed upon between seller and purchaser; (4) the purchaser never entered into a binding contract with the owner (citing Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528 (1967)), and it is immaterial who was responsible for failure of completion of the transaction.
We are of the opinion that the court erred in each of these conclusions and that plaintiff was entitled to recover $2,000 in damages from defendant on the undisputed facts and reasonable inferences therefrom.

I
The letter of May 13, 1969 satisfies the statute of frauds. It identifies the property, the seller, the broker and the price. Although it does not specify "the rate of commission on the dollar or the amount of the commission," to quote *478 the act, a proposal which states a net price to the owner or that the purchaser is to pay the broker's commission is uniformly held to comply with the statute. Mendles v. Danish, 74 N.J.L. 333 (Sup. Ct. 1907); 12 Am. Jur.2d Brokers, § 49 at 810.
Beyond satisfaction of the requirements of the statute, the writing must signify an engagement of the broker to sell the property on behalf of the owner. However, the writing need not expressly use language of authorization, see Clark v. Griffin, 95 N.J.L. 508 (E. & A. 1921), if authorization is fairly implied by the writing. In determining whether such implication is warranted from the words used in the writing, however, it is permissible, and sometimes, as here, essential to scrutinize the surrounding circumstances. Cf. Garden State Plaza Corp. v. S.S. Kresge Corp., 78 N.J. Super. 485 (App. Div. 1963), certif. den. 40 N.J. 226 (1963).
Defendant asserts the intent of the letter of May 13, 1969 was merely to apprise the broker that if it should decide to sell the property at any time in the future it would not take a lower price than $60,000 net, but that it was not presently authorizing the broker to secure a purchaser at that price. The trial judge did not find such an intent, and the proofs as to the circumstances leading up to the sending of the letter do not support the hypothesis. Indeed, to the contrary. From the minutes of the meetings of the executive committee of April 28 and May 5, particularly the latter, it is apparent that plaintiff wanted to know whether the Lodge would sell at that time, and for what price. He was not soliciting an expression as to what price the Lodge would expect if it decided to sell at some indefinite, indeterminable later date. He had a purchaser ready to buy then at a satisfactory price. He was expressly told on May 5 he would be given an answer "within the next few days." After he left the meeting the committee told Caporale to inform plaintiff that the "sale price" would be $60,000 plus broker's fees. The letter of May 13, 1969 to Stanchak *479 substantially executed that instruction. The minutes and the letter, in the light of all the circumstances, are instinct with an unequivocal message to Stanchak that the Lodge would sell at that time, and that he was authorized on its behalf to attempt to secure a purchaser on those terms. Caporale's testimony on cross-examination, quoted above, nails down that intent. That being so, the Lodge made itself liable to the broker for his lost commissions if he produced a purchaser ready, able and willing to buy on those terms, and the Lodge later backed out of the deal because of a change of heart. This is hornbook law, which, as will be seen, was not altered by the decision or rationale of the Dobbs case, supra.
The fact that the broker entered the negotiations as an emissary of a prospective purchaser does not negate the hypothesis of the seller obligating itself to the broker by authorizing him to procure a purchaser on specified terms. It is the essence of the realty brokerage business for the broker to attempt to match up purchaser prospects with seller prospects from his lists of both. Such lists and the broker's time and efforts are his stock in trade, and it is common knowledge of sellers and buyers of realty that if the broker brings the parties together on mutually acceptable terms he expects a commission for his labor. Harris v. Perl, 41 N.J. 455, 462 (1964), quoted in Dobbs, 50 N.J. at 558. Thus, in the absence of a special agreement otherwise, the seller engaging the broker will render himself liable to the broker for the stipulated commission, or for damages, if the seller wrongfully repudiates the deal after the broker has done his part, notwithstanding that it was the purchaser who engaged the broker originally. Clark v. Griffin, supra, is illustrative; after the broker there contacted the owner on behalf of a prospective purchaser the owner wrote the broker, inter alia, "Tell your man to make me an offer".

II
The trial court erred in reading Dobbs, supra, necessarily to require the entry by the principals into a binding contract *480 of sale before the broker could recover from the seller after producing a purchaser willing to contract on the seller's terms, the deal thereafter being frustrated by the seller's unjustified repudiation. The generality of the decided cases, and the particular facts of Dobbs, involved situations wherein the broker had in fact effected an executed contract of sale between the principals and the deal thereafter fell through without fault of the seller. Dobbs, in rejecting the prior rule that the broker was in such case entitled to recover his commission upon the signing of the contract, and in announcing that thereafter the seller would not be liable to the broker if the contract failed of consummation by closing of title without wrongful conduct of the seller, thus articulated both the rejected and the new rule in terms of the situation in which a contract has been entered into by the principals. 50 N.J. at 543, 547, 561.
But neither the holding nor the ratio decidendi of Dobbs implies a rejection of the view exemplified by Owen v. Riddle, Ex'r, 81 N.J.L. 546 (E. & A. 1911) and Marschalk v. Weber, 11 N.J. Super. 16 (App. Div. 1950), that where the broker has procured a purchaser willing and able to buy on the seller's terms as stated to the broker, and there is a failure of the principals to enter into a formal contract of sale by reason of the seller's fault, as, e.g., where he had subsequently changed his mind (as in Marschalk, supra), the seller is liable to the broker. And see, generally, in accord: 12 Am. Jur.2d, Brokers, § 183 at 923. Evidence of the Dobbs court's concordant view is provided by its apparently approving reference to the out-of-state cases which hold that where the broker sues the owner "because of an alleged unreasonable refusal to enter into a contract of sale [emphasis by the Supreme Court] with the proffered willing and able customer," the broker must show financial ability of the purchaser to perform at the closing of title. 50 N.J. at 544. (In the instant case the plaintiff has made such a showing).
*481 It is thus plain that the trial court erred in assigning as one ground for denial of recovery the fact that the principals did not enter into a formal contract of sale. The same conclusion applies to the assigned reason that the purchaser did not submit a contract to the seller. Apart from the fact that no authority is cited that such is the purchaser's duty, the subsequent flat refusal of the defendant to do any business with the purchaser excused whatever tender might otherwise have been called for by the purchaser vis-a-vis the seller. Cf. 55 Am. Jur., Vendor and Purchaser, § 344 at 772; 49 Am. Jur., Specific Performance, § 144 at 167; and see Salvatore v. Trace, 109 N.J. Super. 83, 92-93 (App. Div. 1970), aff'd o.b. 55 N.J. 362 (1970). The fact that here any subsidiary terms of a contract over and above those of parties, property and price were not negotiated was not the fault of the purchaser, who was clearly willing to negotiate on any other necessary terms, including time of performance, but entirely that of the defendant.[1]
Precisely apposite to the present case is the general view that where the broker's employment authorization from the owner specifies he is to look for his compensation to the purchaser, the employer will nevertheless be liable to the broker in damages if he procures a purchaser ready, able and willing to buy on the seller's terms but the seller renders it impossible for the broker to collect from the purchaser by wrongful refusal to complete the deal negotiated; in such case there is a violation by the seller of an implied collateral agreement with the broker to perform the sales agreement negotiated. 12 Am. Jur.2d, Brokers, § 163 at 902.
Reversed with directions for remand and entry of judgment in the Law Division in favor of plaintiff and against defendant in the sum of $2,000 plus interest from July 1, 1969 and costs.
NOTES
[1] We do not of course imply that on this record the purchaser had a cause of action against the Lodge. Our discussion relates only to the broker's claim against the seller.