155 N.J. Super. 286 (1977)
382 A.2d 704
MARGARET SCHOEN AND EASTERN UNION COUNTY BOARD OF REALTORS, PLAINTIFFS,
v.
TOWNSHIP OF HILLSIDE AND HILLSIDE TOWNSHIP COMMITTEE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 15, 1977.
*289 Mr. William A. Cambria for plaintiffs (Messrs. Sauer, Boyle, Dwyer, Cannellis & Cambria, attorneys; Mr. William A. Cambria on the brief).
Mr. Myron E. Fuhrmann, Township Attorney, for defendants (Mr. Fuhrmann on the brief).
FELLER, J.S.C., Retired, Temporarily Assigned on Recall.
This is an action to set aside as unconstitutional a zoning ordinance, adopted by the Hillside Township Committee on February 15, 1977 and subsequently reenacted on April 19, 1977, which limits, restricts and prohibits "For Sale," "Garage Sale" and "Sold" signs on residential properties in Hillside Township.
The amendments to the ordinance which are the subject matter of the suit provide as follows:
AN ORDINANCE TO AMEND CHAPTER XXII (ZONING) OF THE "REVISED GENERAL ORDINANCES OF THE TOWNSHIP OF HILLSIDE, 1971"
BE IT ORDAINED BY THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF HILLSIDE:
SECTION 1, Section 22-7.10 (Outdoor Signs) is hereby amended to read as follows:
*290 SECTION 22-7.10 (e) REAL ESTATE SIGNS.
(e) On all residential premises wherein any dwelling is occupied by not more than six families, the display of any sign stating the premises are "for sale", or any other words indicating that the use or possession of such premises or transfer of any interest in such premises are available to another, is prohibited, unless the following standards are complied with:
1. Signs shall not exceed ten inches by fourteen inches in area and shall consist of black lettering on a white background, which shall state only that the property is either for sale or for rent and may contain only such legends as "Inquire Within", a telephone number or the name of the owner of the property.
2. The sign must be removed within thirty days after the execution of the agreement of sale, and/or within 10 days after the leasing, lettering, renting, using or possession of such premises or transfer of any interest in same.
3. The tip of the sign shall be no higher than twenty inches from the ground.
4. There shall be a setback of at least fifteen feet from all street lines.
5. No more than one sign shall be permitted.
SECTION 2. Section 22-7.10 (Outdoor Signs) is hereby amended by adding the following:
(k) the erection, maintenance or display of any sign marked "Sold" or any other words indicating that the premises is to be sold or about to be sold is prohibited within the boundaries of the Township.
SECTION 3. Section 22-7.10 (1) (Garage Sales) is hereby amended by adding the following:
Section 22-7.10 (1) (Garage Sales).
(1) The display of any signs stating that there is a "Garage Sale", or any other words indicating that there will be a garage sale, is prohibited unless the following standards are complied with:
1. Signs shall not exceed ten inches by fourteen inches in area.
2. Signs shall consist of black lettering on a white background which shall state only that there is a "Garage Sale".
3. The sign must be removed immediately after the garage sale is over.
4. The sign can only be placed on the property where the garage sale is taking place and no other areas.
5. The sign shall have a setback of at least fifteen feet from all street lines.
SECTION 4. All ordinances or parts of ordinances inconsistent herewith are hereby repealed.
SECTION 5. This ordinance shall take effect immediately upon final adoption and publication according to law.
SECTION 6. This ordinance is a temporary ordinance pursuant to the New Jersey statutes.
*291 The enforcement of this amendment has been temporarily restrained pending the determination of the court in this matter. Testimony and legal arguments were heard and decision was reserved.
Plaintiffs contend that the ordinance violates the First and Fourteenth Amendments of the United States Constitution. Defendants deny this and contend that the township has the authority to reasonably regulate and restrict signs and, further, that the Zoning Act must be construed liberally in favor of the municipality.
Plaintiffs introduced testimony concerning the real estate business in Hillside Township. This testimony indicated that the current population of the township is about 25,000 and that there are about 5,000 residential dwellings in the township. There are seven realtors who have their place of business in the township, but there are substantially more  perhaps 50 or 60  realtors who might be doing business within the township at one time.
The testimony also revealed that 101 sales of residential properties occurred within the township during the past six months and that there were 139 houses listed for sale with realtors in June 1977.
There was testimony indicating that the use of the sign on a particular property depended upon several factors, including the marketability of property in the particular area and the professional judgment of the realtor who listed the property. The testimony also indicated that a realtor would post a sign only with permission and consent of the homeowner involved.
Testimony at the hearing further indicated that most realtors operating within Hillside Township utilize a sign with the approximate dimensions of 18 inches by 24 inches. The testimony indicated that, in the real estate industry, a sign of these dimensions was considered to be standard size.
There was also evidence that the two sources of calls to realtors from the general public resulted from newspaper advertisements and signs on the property, but that without *292 signs there was a reduction in the number of telephone calls to their offices concerning particular properties.
On the subject of "Sold" signs, the testimony indicated that these signs were a means of conveying truthful information to the general public  namely, that the property had been sold through the services of the named realtor and that the house was no longer on the market. It was noted that "Sold" signs would, on the one hand, forestall continuing calls concerning that particular property and, on the other hand, generate other calls from buyers interested in similar homes and from other homeowners in the neighborhood interested in utilizing the services of the realtor.
The testimony offered by defendants in support of the ordinance consisted primarily of personal opinions that some real estate signs in use were objectionable and unnecessary. There was also objection to the existence of a number of signs on a particular street at any one time. The major concern was that proliferation of signs might indicate that the entire neighborhood or town was for sale, and that the use of signs might result in a decrease in property values or deterioration of the neighborhood.
There was no specific testimony, however, as to any particular harm caused by the use of real estate signs. The witnesses agreed that there had been no depreciation of property values by the use of signs in the past. What the witnesses expressed substantially was no more than a vague fear of uncertainty in the future. There was also objection to the use of signs as a means of advertising, and also to the wording or layout of particular signs.
The testimony of Commissioner Santogata stated specifically that the ordinance was intended to prohibit the standard-size real estate sign and that it sought to require uniformity of all such signs. He said that the ordinance eliminated the realtor's name so as to prohibit advertising on private property.
Mrs. Alberta Clinton, representing the Clinton Association, stated that the ordinance was approved overwhelmingly by *293 the members of that association. However, in cross-examination she admitted that the neighborhood represented by the association had not deteriorated during the seven-year period that she lived there.
The testimony of Mary McTaggart, Frank Nicoletti, Adam Samiec (engineer and planner of Irvington and Hillside) and Barbara Studney may be summed up as follows: A "Sold" sign invites vandalism; a "Buy" sign does not indicate that a house is for sale; there is no opposition to all signs; the regulation as to the size of signs by Irvington is 22 inches by 24 inches; that plaintiffs' signs seem to advertise the realtor and large signs are an obstruction and mar the natural beauty of the neighborhood.
Both plaintiffs and defendants, in support of their respective contentions, cite the recent case decided by the United States Supreme Court of Linmark Associates v. Willingboro Tp., 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977). In that case the court stated that a township ordinance prohibiting the posting of "For Sale" and "Sold" signs on real estate in the township, which ordinance was enacted to stem the perceived flight of white home owners from a racially integrated community, violates the First Amendment. This opinion was given notwithstanding that the ordinance restricted only one method of communication, since the ordinance was not necessary to achieve its objectives and in any event impaired the flow of truthful and legitimate commercial information. The court further held that commercial speech cannot be banned because of an unsubstantial belief that the impact is detrimental.
The court in Linmark also stated that there was "no evidence that whites were leaving Willingboro en masse as `For Sale' signs appeared, but merely an indication that its residents are concerned that there may be a large influx of minority groups moving into the town with the resultant effect being a reduction in property values." The court further stated that if dissemination of the free flow of commercial information can be restricted, then every locality *294 in the country can suppress any facts that reflect poorly on the locality so long as a plausible claim can be made that disclosure would cause the recipients of the information to act "irrationally."
Defendants contend that the Willingboro ordinance prohibited and banned "For Sale" signs, whereas the Hillside ordinance only regulates the same; thus, the ruling in Willingboro is not applicable. Plaintiffs contend, however, that the ordinance "over-regulates" and restricts and limits not only the size of the signs but also the contents of the same and is in violation of the First Amendment, and thus the decision of the court in Willingboro disposes of the issues involved herein.
As stated supra, the evidence introduced by defendants was that a "Sold" sign invites vandalism and a "Buy" sign does not indicate that a house is for sale; that there is opposition to all signs; that plaintiffs' signs advertise the realtor and that large signs are an obstruction and mar the natural beauty of the neighborhood.
There was no attempt in the case, as there was in Willingboro, to introduce evidence to the effect that the ordinance was enacted to stem the perceived flight of white home owners or that its residents were concerned that there might be a large influx of minority groups moving into Hillside with the resultant effect being a reduction in property values. In fact, this was denied by defendants. Furthermore there was no evidence of panic selling or the threat of panic selling.

I
As stated supra, the ordinance provides that on residential premises the displaying of "For Sale," etc., signs is prohibited unless such signs state only that the property is either for sale or for rent, and may contain only such legends as "Inquire Within" and a telephone number and the name of the owner of the property.
*295 Persons desiring to sell their homes are just as interested in communicating that fact as are sellers of other goods and services. Similarly, would-be purchasers of realty are no less interested in receiving information about available property than are purchasers of other commodities in receiving like information about those commodities. The interest in the free flow of commercial information is in no way lessened by the fact that the subject of the commercial information here is realty rather than abortion of drugs. Linmark, supra, 431 U.S. at 91-93, 97 S.Ct. at 1617-1619, 52 L.Ed.2d at 161-162.
Although, in theory, sellers remain free to employ a number of different alternatives, in practice realty is not marketed through leaflets, sound trucks, demonstrations and the like. The option to which sellers realistically are relegated involve more cost and less autonomy than "For Sale" signs and are less likely to reach persons not deliberately seeking sales information, and may be a less effective medium for communicating the message that is conveyed by a "For Sale" sign in front of the house to be sold.
Advertising, however tasteless and excessive it sometimes may seem, is nevertheless dissemination of information as to who is producing and selling what product and at what price. So long as we preserve a predominantly free enterprise economy, the allocation of our resources in large measure will be made through numerous private economic decisions. It is a matter of public interest that those decisions in the aggregate be intelligent and well informed. To this end the free flow of commercial information is indispensable. Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 765, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).
The elimination of the name of the realtor representing the seller and other pertinent information does not adequately disseminate information as to who is selling and at what price. The realtor is not only the agent for the seller, but also saves the seller considerable inconvenience. He is *296 the "middle man" between the seller and the possible buyer and is the means of affecting and facilitating real property transactions. Any obstacle placed in the way of a possible eventual sale interferes with the free flow of commercial information. In Bates v. Arizona State Bd., 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the Supreme Court held that the First Amendment protects the right of lawyers to advertise the prices at which certain routine services will be performed. It also indicates that there could be no prohibiting against advertisements which include other factual materials, such as an attorney's name, address, telephone number, office hours and the like. The court, therefore, held that a state may not prevent the publication in a newspaper of a truthful advertisement concerning the availability and terms of routine legal services. The court's analysis in Bates of the First Amendment protection provided professional advertising is equally applicable to other professions. If commercial speech is to be distinguished, it must be distinguished by its content. Virginia State Bd. of Pharmacy, supra, 425 U.S. at 761, 96 S.Ct. 1817. But a consideration of competing interests does not mean that such speech should be withdrawn from protection merely because it proposed a mundane commercial transaction. People will perceive their own best interests if only they are well enough informed and that the best means to that end is to open up the channels of communication rather than close them or restrict them. See Virginia State Bd. of Pharmacy, supra at 770, 96 S.Ct. 1817.
Furthermore, the court made it clear that its holdings in Bates, supra does not preclude reasonable regulations of advertising when the responsibilities of a particular profession demand such regulations. Advertising that is false, deceptive or misleading is subject to restraint; advertising claims as to the quality of services as well as advertising concerning transactions that are illegal may be suppressed. There is no evidence that it is necessary to restrict the activities *297 in the present case. See Virginia State Bd. of Pharmacy, supra at 764-765, 96 S.Ct. 1817.
There may be restrictions on the time, place and manner of advertising, but the ordinance does provide for this. However, when the ordinance limits and restricts the contents of "For Sale" signs for no legitimate reason, such limitations and restrictions interfere with the free flow of commercial information.
Furthermore zoning regulations can go only as far as is necessary to obtain a proper objective of zoning; there cannot be unnecessary and excessive restrictions on the use of private property or the pursuit of useful activities. The regulations must not be unreasonable, arbitrary or capricious; the means selected must have a real and substantial relation to the object sought to be attained, and the regulation or proscription must be reasonably calculated to meet the evil and not exceed the need or substantially affect uses which do not partake of the offensive character of those which cause the problem sought to be ameliorated. Kirsch Holding Co. v. Manasquan, 59 N.J. 241, 251 (1971); Katobimar Realty Co. v. Webster, 20 N.J. 114 (1955); J.D. Construction Corp. v. Freehold Bd. of Adj., 119 N.J. Super. 140, 145 (Law Div. 1972).
Therefore, it is the opinion of this court that the proffered justifications of defendant were inadequate to support the advertising restrictions and restraints. The First Amendment means that the government has no power  without justification  to restrict expression because of its message, its ideas, its subject matter or its content. Chicago Police Dept. v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).
The ordinance also provides that "For Sale" etc., signs shall not exceed 10 inches by 14 inches in dimension, shall be set back at least 15 feet from the streets, shall be no higher than 15 feet from the ground and shall consist of black lettering on a white background.
*298 It was obvious that as a result of a demonstration in court and as a result of a personal inspection of the streets and properties in the township, a sign not exceeding 10 inches by 14 inches could be read and distinguished set back at least 15 feet from the curb provided the contents of the sign were the same as required by the ordinance.
However, since this court has determined that the limited contents required by the ordinance restricts the free flow of commercial information, there will not be enough space for the insertion of the realtor's name and any other pertinent information that may be necessary to promote and facilitate a sale. A sign which shall not exceed 10 inches by 14 inches would be inadequate for this purpose. To hold otherwise would mean that a substantial amount of marketing information would be "crowded" into an extremely limited amount of space  such as the fact that the house is for sale, the name of the realtor to contact, the address and telephone number of the realtor, as well as any other pertinent information concerning the property offered for sale.
The inadequate dimension of the sign would be a contributing factor in impairing the free flow of commercial information. However, this court should not determine the adequacy of the dimension of a large sign. That is a legislative matter that should be determined by the governing body.
However, it should be noted that the Hillside zoning ordinance that was amended provided that real estate signs shall not exceed four square feet, and Adam Samie testified that the ordinance in Irvington fixes the dimensions of signs at 22 inches by 24 inches and that plaintiff's signs seem to conform to this regulation.
The requirement that the sign shall consist of black lettering on a white background would seem to be too restrictive also. This effort to restrict the color on a real estate sign cannot stand, just as any attempt to control the color of homes in a particular neighborhood could not stand. This would bar the use of a realtor's trade mark or other insignia *299 that may be used in advertising a particular home for sale. See Piscitelli v. Scotch Plains, 103 N.J. Super. 589 (Law Div. 1968).
Thus, it is evident that the maximum dimension of the sign and the attempt to restrict the color of the same contributes to the impairment of the free flow of commercial information. Furthermore, "For Sale" signs are used on properties only on a temporary basis and there is no evidence that the use is widespread. In fact, an inspection of properties in the township made by this court revealed that there are only a comparatively few "For Sale" signs on properties, and this would therefore eliminate any need for uniformity in use or aesthetic conditions in appearance.
Plaintiffs have proved their contentions that (1) the section of the ordinance, § 22-7.10(e) par. 1, violates the First Amendment of the United States Constitution which guarantees freedom of speech and the press, and (2) violates the Fourteenth Amendment which restricts the powers of the states under the same circumstances. This restriction applies to all activities of all organs and units of the states, including state statutes and local ordinances as well, and also includes the action of boards and commissions, whether of the state or county or municipality. See Crawford's Clothes Inc. v. Newark, 131 N.J.L. 97 (Sup. Ct. 1944); Blake v. McClung, 172 U.S. 239, 19 S.Ct. 165, 43 L.Ed. 432 (1898); Vincennes v. Marland Refining Co., 33 F. 2d 427 (7 Cir.1929); Dohany v. Rogers, 33 F.2d 918 (Mich. D. 1929).

II
The ordinance provides that the signs shall be removed within 30 days after execution of the sale or within ten days after leasing. The ordinance also prohibits the erection, maintenance or display of any sign marked "Sold" within the township and restricts signs providing for "Garage Sales."
*300 Although the court in Linmark Associates, supra, held that the ordinance prohibiting "For Sale" signs and "Sold" signs was a violation of the First Amendment, the court did not in any part of the opinion discuss the merits of "Sold" signs. The opinion was devoted to the importance and necessity of "For Sale" signs as aiding the free flow of commercial information. The court stated that persons desiring to sell their homes are just as interested in communicating that fact as are sellers of other goods and services.
Thus, comments concerning the advantage of "For Sale" signs is to promote sales of real estate. They have nothing to do with the importance of "Sold" signs. These serve no useful purpose except personal advertising after a transaction has been completed and have no relationship with the free flow of commercial information, and the ordinance which provides for the removal of a "For Sale" sign on the property within 30 days after the execution of the sale seems to dispose of the question of property that has been sold.
The regulation in the ordinance of "Garage Sale" signs are reasonable. There is no evidence that such regulations would impair or impede the free flow of commercial information. The court takes judicial notice that many garage sales are conducted on the premises; negotiations are at a minimum; no contracts have to be executed; no closings are necessary; no deeds are executed or mortgages are executed; that no apportionments are to be made with reference to insurance, taxes and the like, and that no searches are required; and no credit investigations are required. Most of the above are required in the sale of real property. See Earlin v. Mors, 1 N.J. 336 (1949); Menley & James Laboratories Ltd. v. Vornado Inc., 90 N.J. Super. 404 (Ch. 1966); Stanchack v. Cliffside Pk. Lodge, etc., 116 N.J. Super. 471 (App. Div. 1971); Nary v. Dover Parking Auth., 58 N.J. Super. 222 (App. Div. 1959); Westerdale v. Kaiser-Frazer Corp., 6 N.J. 571 (1951); N.J. State Bar Ass'n v. Northern N.J. Mtg. Assoc., 55 N.J. Super. 230 (Ch. Div. 1959), rev'd in part and aff'd in part 32 N.J. 430 (1960).
*301 Thus it is evident that the regulations of "Garage Sales" signs as set out in the ordinance are reasonable and valid and not in violation of the First Amendment.
Therefore, for the reasons set out above it is the opinion of this court that
1. The sections of the township ordinance which limits and restricts the contents of "For Sale" signs on residential property and which limits and restricts the dimensions of the same, as well as the colors of said signs, are in violation of the First Amendment and Fourteenth Amendment of the United States Constitution. Such limitations and restrictions are unconstitutional and void and are restraints upon the free flow of commercial information.
2. The sections of the township ordinance which prohibits the use of "Sold" signs on residential properties and regulate the use of "Garage Sale" signs are reasonable, valid and constitutional. These provisions of the ordinance do not affect in any way the free flow of commercial information.
3. The temporary restraints issued by this court with reference to the enforcement of the "Sold" signs and "Garage Sale" signs sections of the ordinance are hereby discontinued.