[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. INTRODUCTION
The regulation of business signs involves distinctive legal problems. On the one hand, "signs are a form of expression protected by the Free Speech Clause." City of Ladue v. Gilleo,512 U.S. 43, 48 (1994). On the other hand, "[u]nlike oral speech, CT Page 9123 signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulations." Id. Because of these conflicting interests, determination of the constitutionality of municipal sign regulation is a delicate judicial task.
The plaintiffs in this zoning appeal, S. Rudy Gatto ("Gatto") and K-Mart Corporation, own various portions of a forty acre parcel located at 1315 Foxon Boulevard and 1190-1212 Quinnipiac Avenue in New Haven (the "Property"). The fight in this case is over the height of two business signs that the plaintiffs wish to place on the Property. A condition to a special exception presently limits the height of these signs to 20 feet. The plaintiffs wish the respective signs to be 85 and 35 feet high. Their primary argument is based on the First Amendment. For the reasons discussed below, they cannot succeed on this record.
II. STATEMENT OF FACTS
On April 19, 1993, Gatto, who then owned the entire Property, applied to the New Haven Board of Zoning Appeals (the "BZA") for a special exception to construct a retail shopping complex on the Property. On July 30, 1993, the BZA granted the application subject to certain conditions. Condition number 8 is the condition at issue in this case It provides that "[t]wo pylon signs shall be permitted, with a maximum height (to top of sign) of no more than 20, and each signface not to exceed 100 sq. ft." Gatto did not appeal this condition.
The plaintiffs subsequently built a retail shopping complex on the Property. On; October 20, 1995, they applied to the BZA for a coastal site plan and an amendment of condition number 8. Both requests involved increasing the heights of the signs. The plaintiffs' specific request was as follows:
 Applicant hereby requests that Condition #8 be amended to permit two pylon signs measuring as follows:
 1. Main Entrance Sign having a height of 35' and size of 310 sq. ft.
 2. Highway Pylon Sign having a height of 85' and size of 830 sq. ft.
After a number of procedural skirmishes; see Gatto v. City ofCT Page 9124New Haven, 16 Conn. L. Rptr. No. 17, 536 (June 24, 1996); the BZA heard the application on September 3, 1996. The plaintiffs conceded at this hearing that the proposed signs would be illuminated 24 hours a day. On October 24, 1996, the BZA denied the application. It noted that "[t]he highway sign as proposed would be the largest and highest business sign ever allowed in New Haven."
The plaintiffs filed a timely appeal to this court. A hearing was conducted on August 18, 1997. Aggrievement is found. At the request of the plaintiffs, the court, accompanied by counsel, viewed the Property. The view included a tour of several surrounding areas from which the proposed highway sign would be seen.
A brief description of the area is appropriate. The Property is located in a commercial strip on Rt. 80 (Foxon Boulevard). The plaintiffs' retail shopping center can easily be seen from Rt. 80, and they do not claim otherwise. Their concern, rather, is highway traffic. Interstate 91 passes within several hundred feet of the Property. At present, for all practical purposes, the shopping center cannot be seen by motorists passing on the highway. Because of the topography of the area, a 20 foot sign on the Property could not be seen from the highway either. Although the minimum sign height necessary to accomplish this particular purpose cannot be precisely determined from the record, it appears that something like the 85 feet proposed by the plaintiffs would be necessary. The problem is that a sign of this magnitude could be seen from many other locations as well.
The immediate area of the Property, as mentioned, is a commercial strip. A number of surrounding businesses have fairly large signs. The most notable of these are a 30 foot tall McDonald's sign — the familiar golden arches — and a 42 foot tall Shell sign. A large railway berm to the south of the Property, however, effectively shields the residential areas lying further south from the sight of these signs.
One nearby sign is sufficiently large to be seen from both the highway and the residential area to the south. A billboard advertising Kool cigarettes (the "Kool sign") is situated on a pylon near the highway and is 96 feet high. The Kool sign is technically an off-premises "advertising sign," unlike the on-premises "business sign" at issue here. See New Haven Zoning Ordinance § 1. The BZA's characterization of the plaintiffs' CT Page 9125 proposed highway sign as "the largest and highest business sign ever allowed in New Haven" was obviously stated with this distinction in mind. Although technically correct, the BZA's characterization is nevertheless a bit misleading. It appears that the plaintiffs' proposed highway sign would only win the silver medal in the overall high sign competition, with the Kool sign winning the gold by 11 feet. This should not, however, detract from the height and size of each of the plaintiffs' proposed signs, which are obviously considerable. Moreover, the Kool sign was erected prior to a 1994 amendment of the zoning regulations which placed new restrictions on the erection of advertising signs. See New Haven Zoning Ordinance § 44.
As mentioned, a railway berm lies immediately south of the Property. Almost immediately south of the berm lie the Little River, the Quinnipiac River, various marsh and wetlands areas of considerable natural beauty, and an attractive residential neighborhood, including the Quinnipiac River Historic District. These areas are not completely sylvan — the Kool sign can be seen in the distance, as well as some power lines — but the plaintiffs' description of them at argument as "degraded" is very far from the mark. The plaintiffs' proposed highway sign would be a noticeable (and, to many, unwelcome) addition to the view from these areas.
III. CONCLUSIONS OF LAW
 A. The First Amendment
The plaintiffs' principal argument is that the BZA's action in this case violates their First Amendment rights of commercial free speech. Although the plaintiffs additionally assert that the BZA's action violates article First, § 4 of the Connecticut Constitution, that have set forth no separate analysis of their state constitutional rights, and that argument is deemed abandoned.
Commercial signs are a form of expression protected by the First Amendment. City of Ladue v. Gilleo, supra, 512 U.S. at 48. The test used to determine the validity of governmental restrictions of such signs depends on the nature of the restriction. Government regulations of the content of truthful advertising messages call for "the rigorous review that the First Amendment generally demands." 44 Liquormart, Inc. v. RhodeIsland, 116 S.Ct. 1495, 1507 (1996) (plurality opinion of CT Page 9126 Stevens, J.). In contrast, "content-neutral restrictions on the time, place, or manner of expression" justify "less than strict review." Id.
The plaintiffs initially argued in their brief that the BZA's restriction on the height of their sign is content-based. They abandoned this contention at argument and argued instead that the restriction in question is "similar" to a content-based discrimination. This is a creature unknown to our jurisprudential forest. Either a distinction is content-based or it is not. In any event, because the restriction here has nothing to do with the message on the plaintiffs' sign, it is neither a content-based discrimination nor "similar" to a content-based discrimination.
The plaintiffs argue that this case is similar to Schoen v.Township of Hillside, 382 A.2d 704 (N.J.Super.Ct. Law Div. 1977). Schoen, however, involved a content-based restriction not present here. The zoning ordinance at issue in that case limited the size of "For Sale" signs to ten by fourteen inches.382 A.2d at 705. The ordinance also prohibited the use of other information, such as the realtor's name. Id. at 706. This latter restriction was held to violate the First Amendment. Id. at 709. Given this, holding, the size limitation necessarily had to go. Ten by fourteen inches simply wasn't enough space to contain the necessary information. Id. at 710.
Schoen has obvious implications for cases involving the advertising of wordy messages. Some messages are sufficiently complex that they require a certain amount of physical space in which to convey them. A message advocating nuanced positions on international trade might require more space than, for instance, the familiar Nike slash. That concern, however, is not present in this case. The plaintiffs' messages on their proposed signs are not at all wordy. One proposed sign says, "Elm City Plaza." The other says, "Super KMart Center open 24 hours." These are not propositions from Wittgenstein. The plaintiffs make no contention that these messages could not be contained in the 100 sq. ft. surface already allowed by condition number 8. Schoen demands no more.
The height restriction that the plaintiffs attack is a content-neutral time, place, and manner restriction. As such, it is subject to review under the four-pronged test first set forth in Central Hudson Gas Electric Corp. v. Public ServiceCT Page 9127Commission, 447 U.S. 557, 563-66 (1980). This test inquires whether "(1) . . . [the] speech concerns lawful activity and is not misleading . . . (2) [it] seeks to implement a substantial governmental, interest, (3) [it] directly advances that interest, and (4) [it] reaches no further than necessary to accomplish the given objective." Metromedia, Inc. v. City of San Diego,453 U.S. 490, 507 (1981) (plurality opinion of White, J.). Accord Burns v.Barrett, 212 Conn. 176, 182, 561 A.2d 1378, cert. denied,493 U.S. 1003 (1989).
The first prong of the Central Hudson test plainly favors the plaintiffs, since the messages on the proposed signs concern lawful activity and are not misleading. This means that the government's restriction cannot be entirely freehanded. FloridaBar v. Went For It, Inc., 515 U.S. 618, 623-24 (1995). The regulation is, however, nevertheless valid if the government satisfies the remaining three prongs of Central Hudson.515 U.S. at 624.
The plaintiffs view the second prong of the Central Hudson
test as the battleground of the case. Does the height restriction in question seek "to implement a substantial governmental interest"? This prong requires an examination of the BZA's articulated reasons for its action. Those reasons were extensive. The BZA found that "the proposed signage would be detrimental to both the character and the natural views and vistas of the surrounding area." The BZA also found that the proposed signs would have a negative impact on both coastal and historic areas. It further found, as mentioned, that the proposed highway sign "would be the largest and highest business sign ever allowed in New Haven."
These concerns implicate substantial governmental interests. The plurality opinion in Metromedia found that a desire to further "the appearance of the city" was a substantial governmental goal. 453 U.S. at 507-08. The Court subsequently found that "the visual assault . . . presented by an accumulation of signs . . . constitutes a significant substantive evil within the City's power to prohibit." City Council v. Taxpayers forVincent, 466 U.S. 789, 807 (1984). The BZA, in explaining its action, articulated this very concern. It additionally expressed its concern for protecting the nearby wetlands and coastal areas. These are substantial concerns as well. Governments in the modern world have a strong interest in protecting the environment from a broad range of visual and physical pollution. Taxpayers ForCT Page 9128Vincent, supra, 466 U.S. at 807 n. 26.
The plaintiffs rely on the skepticism towards the "mere incantation of aesthetics as a proper state purpose" expressed inNational Advertising Co. v. Town of Babylon, 900 F.2d 551, 556
(2d Cir.), cert. denied, 498 U.S. 852 (1990). That reliance is misplaced. National Advertising struck down a number of municipal billboard ordinances that impermissibly restrained commercial speech. Those ordinances, unlike the restriction here, were content-based, favoring commercial over noncommercial speech.900 F.2d at 554. Moreover, the ordinances contained no statement identifying the interests that they promoted, and no extrinsic evidence of such an interest appeared on the record. Id. at 555. Under these circumstances, the Second Circuit understandably declined to rely on general statements of aesthetic purpose invoked by counsel in argument. Id. at 556. Accord Dills v. Cityof Marietta, 674 F.2d 1377, 1381 (11th Cir. 1982), cert. denied,461 U.S. 905 (1983).
The National Advertising scenario bears little resemblance to this case. In the first place, as already discussed, the restriction here is not content-based, and the judicial scrutiny that it must receive is necessarily less strict. In the second place, the record in this case is much different than the record in National Advertising. The record in National Advertising
contained no statement of purpose by the regulating authority. In contrast, the regulating authority in this case — the BZA — gave extensive reasons for its decision. The restriction in question here, moreover, is not a general restriction applicable to all signs but is a restriction on a particular set of two large signs, one of which would be the largest and highest business sign and one of the highest signs of any description ever allowed in New Haven. Finally, the record in this case has been supplemented by a view, taken at the specific request of the plaintiffs. Under all these circumstances, there is no need to rely on the general incantation of aesthetics at issue inNational Advertising. The record here amply supports the significant visual and environmental concerns articulated by the BZA. The height restriction thus seeks to implement a substantial governmental interest.
The third Central Hudson criterion, whether the restriction directly advances the governmental interest in question, is easily satisfied on this record. The height of the signs is directly related to their visibility and prominence. Signs of the CT Page 9129 height of the proposed signs — especially the proposed highway sign — would be visible from a long way, particularly if (as the plaintiffs propose) they are illuminated at night. The height restriction has an obvious direct relationship to these concerns.
The final Central Hudson criterion presents a somewhat closer question. Does the height restriction here reach no further than necessary to accomplish the given objective? The present height restriction, established by condition number 8, is twenty feet. The justification for this particular height limitation is not clear from the record.
At argument, the plaintiffs pointed out that under New Haven Zoning Ordinance § 55.F.3, business signs under 30 feet in height are exempt from coastal site plan review requirements. If the plaintiffs had requested permission for a business sign 29 feet in height, a denial of such a request based on coastal management concerns would raise obvious problems. That is not, however, the case here. The plaintiffs requested signs of 85 and 35 feet in height respectively. These signs would not qualify for exemption under § 55.F.3.
When this issue was discussed at argument, it became clear that the plaintiffs do not seek signs that are significantly lower than the heights that they have requested. In their estimation, the heights requested are at least near the minimum height necessary to gain the attention of the audience they seek. This is particularly the case with the highway sign, which apparently must be close to 85 feet high in order to be seen by motorists on the highway. At this height, of course, for reasons already discussed, the sign will be seen from a number of other areas as well. Under these circumstances, BZA's denial of the plaintiffs' request reaches no further than necessary to accomplish the given objective. This is especially case since the BZA's action in the case at hand was simply a denial of a specific request for two signs of very considerable magnitude
For the reasons described above, the BZA's action in denying the plaintiffs' request withstands scrutiny under the CentralHudson test. The First Amendment is not violated in these circumstances.
B. The Legal Authority For Condition No. 8
The plaintiffs next argue that condition number 8 violates CT Page 9130 New Haven's Special Act powers and constitutes an improper exercise of the police power. The merits of this argument are dubious in the extreme. Briefly stated, Conn. Gen. Stat. §8-2 (a) expressly allows local zoning commissions to regulate "the height, size and location of advertising signs and billboards," and our Supreme Court held this to be a proper exercise of the police power in Murphy, Inc. v. Town of Westport, 131 Conn. 242,40 A.2d 177 (1944).
In any event, the posture of this case does not permit a review of the merits of this argument. The plaintiffs secured the special exception they sought to construct a retail shopping complex in 1993 and did not challenge the condition in question by appeal at that time. Having obtained the benefits of the special exception, they are precluded from accepting those benefits and challenging the statutory validity of the conditions to that special exception years after the fact. Upjohn Co. v.Planning Zoning Commission, 224 Conn. 82, 102, 616 A.2d 786
(1992).
C. The Coastal Management Act
The plaintiffs next argue that the ABA's action is inconsistent with the Coastal Management Act, Con. Gen. Stat. §§ 22a-90, et seq. The plaintiffs' exceedingly brief argument on this point is unconvincing. Conn. Gen. Stat. § 22a-105 (e) requires a board reviewing a coastal site plan "to ensure that the potential adverse impacts of the proposed activity on . . . coastal resources . . . are acceptable." Conn. Gen. Stat. §22a-93 (15)(F) defines the term "adverse impacts on coastal resources" as including "degrading visual quality through significant alteration of the natural resources of vistas and view points." The BZA's action is not inconsistent with these provisions. The record, including the view taken by the court, amply shows that the proposed signage would degrade visual quality as that term is used in § 22a-93 (15)(F).
D. Equal Protection
The plaintiffs finally argue that the BZA's action violates their guarantee of equal protection. The thrust of their claim is that, in their view, other similarly situated commercial establishments in the area are allowed to have signs higher than theirs. CT Page 9131
The initial issue that must be addressed with respect to this claim is the appropriate standard of judicial review. This is a review of a decision by a municipal zoning authority acting pursuant to the police powers of the government. For reasons already explained, the action in question did not violate the First Amendment. The plaintiffs make no argument that the decision in question burdened any other fundamental; constitutional rights or created any "suspect" classifications, such as race. Under these circumstances, the rational basis test is the appropriate analysis. Vacco v. Quill, 117 S.Ct. 2293, 2297
(1997). See Murphy, Inc. v. Town of Westport, supra,131 Conn. at 304.
On this record, the plaintiffs cannot prevail on the rational basis test. It is well established that,
 1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.
Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78-79 (1911).See United States Railroad Retirement Board v. Fritz,449 U.S. 166, 174-76 (1980). It is inappropriate for a court, in making an equal protection analysis, to invalidate legislative or administrative decisions that it simply deems unwise or unartful.Id. at 166. "The problems of government are practical ones and may justify if they do not require, rough accommodations."Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69
(1913).
The observations just cited are pertinent here. The record shows that the decision complained of was not arbitrary, but had a reasonable basis. The BZA's visual and environmental concerns, CT Page 9132 however debatable, are at least rational. For purposes of the equal protection clause, this is enough.
IV. CONCLUSION
For the reasons explained above, the appeal is dismissed.
Jon C. Blue Judge of the Superior Court