**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0481-18T2

GEBROE-HAMMER ASSOCIATES,

    Plaintiff-Respondent,

v.

WEST GREEN GABLES, LLC,

    Defendant-Appellant,

and

JEFFREY WITTMANN,[1]

    Defendant.

_____

Submitted July 9, 2019 – Decided July 30, 2019

Before Judges Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6496-16.

Nemergut & Duff, attorneys for appellant (Paul J. Nemergut, III, of counsel and on the briefs; Jeffrey Zajac, on the briefs).

---

[1] Defendant Jeffrey Wittmann was dismissed under a consent order in July 2018.

Brach Eichler, LLC, attorneys for respondent (David J. Klein, of counsel and on the brief).

PER CURIAM

In this matter arising out of a commercial real estate transaction, plaintiff Gebroe-Hammer Associates sought a commission for procuring a buyer for the property owned by defendant West Green Gables, LLC (defendant or LLC). Defendant appeals from the entry of two summary judgment orders in favor of plaintiff. After a review of the contentions in light of the record and applicable principles of law, we affirm.

Defendant owns property consisting of twenty-one apartment-type townhouses. Under an operating agreement, Jeffrey[2] and his wife, Susan, each held a fifty percent interest in the LLC. The certificate of formation listed Jeffrey as the registered agent. Section 5.1 of the LLC's operating agreement provided that "[t]he [LLC] shall be managed by the [m]embers. . . . Members owning more than fifty percent (50%) of the [p]ercentages then held by all [m]embers shall have the right to act for and bind the [LLC] in the ordinary course of its business." The agreement defined a "member" as "each [p]erson signing this Agreement and any [p]erson who subsequently is admitted as a

---

[2] We use the Wittmann's first names for ease of the reader.

member of the [LLC]."  The operating agreement was not affected by the Wittmann's divorce in 2013; Jeffrey and Susan remained the sole members.

Susan died in 2015 and her estate passed to the Wittmann's daughters. Under the operating agreement, the daughters became interest holders, not members.  Susan's brother, John Stefanicha, was the executor of her estate.

Plaintiff is a commercial real estate brokerage firm.  In July 2016, Adam Zweibel, plaintiff's vice-president, came to Jeffrey's office inquiring about Jeffrey's interest in selling the property.  Zweibel was aware that the LLC owned the property.  However, in their conversations, Zweibel stated Jeffrey advised that he was the LLC's owner.  Although Zweibel and Jeffrey differ in their accounts of this, and the two subsequent conversations between them, the men ultimately signed a document entitled "AGREEMENT FOR EXCLUSIVE RIGHT TO SELL OR EXCHANGE" (listing agreement).

The listing agreement gave plaintiff the exclusive right to list and sell the property, setting a $5.2 million purchase price and a $250,000 commission to plaintiff upon it "procuring a purchaser."  Zweibel signed the listing agreement on behalf of plaintiff.  Jeffrey signed in an individual capacity, acknowledging in the document that he was "the owner [] or authorized [a]gent [] of [the] owner" of the property.  There was no reference to the LLC.

The listing agreement, originally dated August 2, 2016, was amended with handwritten notations on August 8, 2016. Jeffrey's initials appear on the document in multiple places. Jeffrey testified during depositions that he had an attorney review the listing agreement prior to signing it.

On August 8, Greenstacks LLC proffered a letter of intent (LOI), meeting the purchase price and deposit terms in the listing agreement. The LOI was not binding on the parties, but was subject to the execution of a purchase sale agreement within two weeks after Jeffrey accepted the LOI. Greenstacks also provided Zweibel with proof of available funds, which Zweibel forwarded to a mortgage broker to obtain financing.

Jeffrey signed the LOI the following day, and instructed Zweibel to forward it to Jeffrey's attorney to prepare a contract. When a contract was not forthcoming, Zweibel inquired of Jeffrey and his attorney as to its status. Jeffrey and his counsel eventually advised Zweibel that Jeffrey did not intend to proceed with the sale. Jeffrey stated he told Zweibel that he had to confer with Stefanicha, as Susan's executor, about the transaction. When Jeffrey eventually contacted Stefanicha several weeks later, Jeffrey said Stefanicha was not interested in getting involved in the sale.

Zweibel subsequently informed Greenstacks that Jeffrey would not proceed with the sale. Nevertheless, Greenstacks continued to inquire about the property's availability for many months after these events.

Plaintiff instituted suit, asserting it was entitled to its commission under the LOI for procuring a buyer for the property. After discovery, defendant and Jeffrey filed summary judgment motions. Plaintiff opposed the motions and moved for partial summary judgment.

In a May 16, 2018 comprehensive oral decision, Judge Keith E. Lynott found Jeffrey had authority to execute the listing agreement on behalf of defendant. He therefore denied defendants' motions. In his ruling, Judge Lynott noted the explicit definitions of "member" and "interest holder" in the operating agreement. Because a member was only a person who either signed the agreement or who was subsequently admitted as a member, and only Jeffrey and Susan had signed the agreement, the judge determined they were the only two members.

However, Susan's death triggered an involuntary withdrawal of a member under Section 6.3.1. The operating agreement provided that a successor of a withdrawn member became an interest holder, not a member. Therefore, Judge Lynott found that, upon Susan's death, Jeffrey became the sole member of the

A-0481-18T2

LLC. Moreover, Jeffrey acted in that capacity by continuing to manage the LLC after Susan's death. Without any other members, only Jeffrey was authorized under the operating agreement to act on behalf of the LLC. Therefore, as the sole member, the judge concluded that Jeffrey was authorized to act on behalf of the LLC and execute the listing agreement.

In addressing plaintiff's motion for partial summary judgment, Judge Lynott concluded plaintiff had not met its burden to establish Greenstacks "was a ready, willing and able purchaser" of the property. Therefore, he denied the motion without prejudice.

In a second summary judgment application, plaintiff provided certifications from Zweibel and Elliot Treitel, a mortgage broker. Judge Lynott noted that a Greenstacks's representative sent a "bank register" to Zweibel on August 5, 2016, showing a bank account balance of $8.9 million. Zweibel contacted Treitel, a vice president at Meridian Capital Group, LLC, on August 8, 2016 to procure mortgage financing for Greenstacks to purchase the property. Treitel acknowledged receiving the information and certified that he

> believed at the time, and continue[s] to believe, based on [his] nearly [twenty years] of experience at Meridian, that there was a high likelihood of Greenstacks obtaining a mortgage for 75% of the purchase price, at prevailing market rates, through

A-0481-18T2

Meridian[,] had Meridian processed the application on behalf of Greenstacks.

Based on the above information, Judge Lynott determined plaintiff had demonstrated its procurement of a ready, willing and able prospective purchaser. He stated:

> The facts establish that Greenstacks entered a [LOI], commenced and pursued financing, had sufficient assets to obtain such financing and to complete the purchase and exhibited continuing interest in the transaction and that the broker followed up on the prospective purchaser's behalf as to the preparation of a definitive contract.

Therefore, plaintiff was entitled to a $250,000 commission and the entry of partial summary judgment.[3]

We review a summary judgment order de novo, applying the same standard used by the trial court. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014) (citations omitted). We must determine whether, viewing the facts in the light most favorable to the non-moving party, the moving party has demonstrated there are no genuine disputes as to any material facts and they are entitled to judgment as a matter of law. R. 4:46-2(c); Davis, 219 N.J. at 406; Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

---

[3] The only issue remaining was whether plaintiff was entitled to attorney's fees under the listing agreement as a prevailing party.

A-0481-18T2

On appeal, defendant does not assert a genuine issue as to any of the material facts; therefore, the facts are uncontroverted. Instead, defendant contends that the judge erred in concluding Jeffrey was authorized to sign the listing agreement and LOI, and in finding plaintiff was entitled to a commission.

After reviewing the record, we are satisfied that Judge Lynott's legal conclusions, as supported by the uncontroverted facts, are unassailable. We, therefore, affirm substantially for the reasons expressed in his well-reasoned opinions. We add the following brief comments.

Section VI of the operating agreement prohibited members from transferring their membership interest. However, a member had the right to surrender his or her interest and voluntarily withdraw from the LLC. The agreement also contemplated an involuntary withdrawal such as a member's death. In that case, "the successor of the withdrawn [m]ember shall thereupon become an interest [h]older but shall not become a [m]ember."

When Susan died in 2015, her estate became an interest holder, but not a member under the operating agreement. Therefore, in 2017, at the time of these events, Jeffrey was the LLC's only member. Only Jeffrey could manage the LLC, and take any actions on its behalf. Jeffrey demonstrated this awareness in continuing to run the business and in executing the listing agreement and LOI.

He further acted as defendant's authorized agent in forwarding the LOI to his attorney and requesting the drafting of a purchase sale contract.

We are unpersuaded by defendant's argument that plaintiff was not entitled to a commission. Plaintiff presented an executed LOI, and produced financial information from the proposed buyer and evidence that the buyer could procure the required financing. Plaintiff's proffered evidence was not challenged.

As we have previously stated:

> [W]here the broker has procured a purchaser willing and able to buy on the seller's terms as stated to the broker, and there is a failure of the principals to enter into a formal contract of sale by reason of the seller's fault, as, e.g., where he ha[s] subsequently changed his mind . . . the seller is liable to the broker.
>
> [Stanchak v. Cliffside Park Lodge, L.O. of M., Inc., 116 N.J. Super. 471, 480 (App. Div. 1971).]

Without any evidence to the contrary, plaintiff established it had procured a ready, willing, and able buyer for the purchase. Jeffrey's change of heart, after executing the listing agreement and LOI on behalf of defendant, cannot eradicate defendant's obligation under the agreement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0481-18T2