444 So.2d 1047 (1984)
HALLMARK BUILDERS, INC., Appellant,
v.
HICKORY LAKES OF BRANDON, INC., Appellee.
No. 83-514.
District Court of Appeal of Florida, Second District.
January 20, 1984.
Rehearing Denied February 13, 1984.
Lynn James Hinson and Paul J. Mokris of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., Orlando, for appellant.
Lewis M. Kanner of Williams, Salomon, Kanner, Damian, Weissler & Brooks, Miami, for appellee.
LEHAN, Judge.
Plaintiff, Hallmark Builders, Inc., appeals from a final summary judgment entered for defendant, Hickory Lakes of Brandon, Inc., in an action seeking specific performance of a right of first refusal to purchase real property. The issue involved is whether the holder of a right of first refusal must submit an agreement to purchase that is identical in every term to the offer to purchase received by the owner of the property. Finding that the offers must be identical only in essential terms, we reverse the summary judgment.
Hallmark Builders entered into an agreement of sale and purchase with Hickory Lakes pursuant to which Hallmark purchased a parcel of real property located in Hillsborough County. Among other things, this agreement granted Hallmark a right of first refusal to purchase certain other real property owned by Hickory Lakes. The agreement required Hickory Lakes to notify Hallmark if Hickory Lakes received an offer from another purchaser for the property. Hallmark would then have fifteen days from receipt of the notice within which to offer to purchase the property on the same terms and conditions contained in the first offer to purchase. Upon such an offer by Hallmark, Hickory Lakes would then be obligated to convey the property to Hallmark under those terms and conditions.
On July 20, 1979, Hickory Lakes gave Hallmark written notice that it had entered *1048 into an agreement of purchase and sale with two parties, D.V. McConnohie and Bendon Investment Company, for sale of the subject property. The relevant terms of the McConnohie/Bendon contract were that Hickory Lakes would receive $410,000 and would transfer to McConnohie and Bendon the title to the real property together with two particularly described promissory notes marked "paid in full." Each of these described promissory notes was dated January 5, 1977, was in the amount of $30,000, and was payable to Housing Investment Corporation, which was the parent company of Hickory Lakes. McConnohie had signed one of the promissory notes and Underberg, the president of Bendon, had signed the other. The notes arose out of a four-party agreement entered into between Housing Investment Corporation, McConnohie and his wife, Underberg and his wife, and Custom Industrial Park, Inc. The four-party agreement provided that McConnohie and Underberg would execute the notes in lieu of being subject to liability for a deficiency decree under a mortgage given by Custom Industrial Park, Inc. to Housing Investment Corporation. McConnohie and Underberg had guaranteed the obligation secured by that mortgage. Under that agreement the liability of McConnohie and Underberg on the notes would be reduced by certain percentages of commissions or fees for sales or leases that resulted from contacts made by Underberg or McConnohie which aided Housing Investment Corp. in either leasing or selling properties which it owned.
After receiving notice of the McConnohie/Bendon contract, Hallmark notified Hickory Lakes that it desired to purchase the real property upon which it had a right of first refusal. Hallmark delivered an agreement of sale and purchase to Hickory Lakes and tendered a $20,000 check as deposit. Hickory Lakes refused to close on the agreement, contending that Hallmark had not properly exercised its right of first refusal. Hickory Lakes claimed that the agreement submitted by Hallmark was not on the same terms as the McConnohie/Bendon contract because it differed in the provisions dealing with the two promissory notes. Hallmark's agreement offered to purchase the property for $410,000, less a credit of $60,000 for the total outstanding principal balances of the two promissory notes. Hallmark believed that the promissory notes had not been satisfied and, therefore, viewed the return of the notes marked "paid in full" under the McConnohie/Bendon contract as a credit against the purchase price of $410,000. Hallmark's agreement further provided that, in the event the balance due under the two notes was greater than or less than $30,000 each, the credit to Hallmark against the purchase price of $410,000 would be increased or decreased accordingly. All other terms of the Hallmark agreement were identical to the McConnohie/Bendon contract. When Hickory Lakes rejected Hallmark's proposed agreement, it extended the period for Hallmark to exercise its right of first refusal until August 14, 1979.
On August 14, 1979, Hallmark submitted a second agreement with all terms identical to the McConnohie/Bendon contract except for the provision relating to the promissory notes. This second agreement provided that Hallmark would be entitled to a $60,000 credit against the $410,000 purchase price or, alternatively, at the option of Hickory Lakes, Hallmark would pay Hickory Lakes the full $410,000 purchase price and receive at closing an assignment of the two promissory notes endorsed by Housing Investment Corporation to Hallmark without recourse.
Hickory Lakes refused to close on this agreement also. Hallmark then sued Hickory Lakes seeking specific performance or damages for failure to convey the property in accordance with the terms of the right of first refusal held by Hallmark. One of Hickory Lakes' affirmative defenses was that Hallmark had attempted to vary the terms of the competing McConnohie/Bendon contract and, therefore, had failed to properly exercise its right of first refusal. After pleadings and discovery, Hallmark moved for partial summary judgment *1049 against Hickory Lakes, contending that Hallmark was entitled as a matter of law to specific performance of its right of first refusal. Hickory Lakes also moved for summary judgment, contending that Hallmark as a matter of law was not entitled to specific performance or damages because of Hallmark's failure to properly exercise its right of first refusal. After hearing, the trial court ruled that there were no genuine issues of material fact and that Hickory Lakes was entitled to summary judgment, finding that Hallmark had failed to properly exercise its right of first refusal. This appeal followed.
Hallmark contends that summary judgment was improper because genuine issues of material fact existed as to whether Hallmark's offer to purchase the real property was on the same terms and conditions as the McConnohie/Bendon contract. Hallmark contends that factual questions remain to be resolved concerning the status of the two promissory notes. Hallmark argues that the facts surrounding the two notes, such as whether the notes had been partially or fully paid, are relevant to determine whether Hallmark's offer matched the McConnohie/Bendon offer.
Hickory Lakes, on the other hand, contends that there were no genuine issues as to any material fact and that summary judgment was proper as a matter of law. Hickory Lakes argues that, in a proper exercise of a right of first refusal, the offer to purchase tendered by the holder of the right matches the competing contract only if the terms of both the offer to purchase and the competing contract are identical, citing Coastal Bay Golf Club, Inc. v. Holbein, 231 So.2d 854 (Fla. 3d DCA 1970).
In Coastal Bay, the lessee of certain real property held a right of first refusal on that property which was very similar to that held by Hallmark in that it gave the lessee the right to purchase the property on the same terms and conditions offered by another offeror. The owner of the property received an offer from a third party to purchase the property at a total price of $2,200,000, payable $200,000 at closing, with the balance bearing interest at seven percent per year and payable $600,000 six months after closing, $700,000 two years after closing, and $700,000 three years after closing. This contract also provided for the payment of a commission of $200,000 to the real estate broker involved in the transaction. After being notified by the owner of the receipt of this offer to purchase, the lessee tendered an offer purportedly matching the first offer under the terms of the right of first refusal. The lessee offered to purchase the property at a price of $2,000,000 payable $200,000 at closing, $600,000 six months after closing, $700,000 two years after closing and $500,000 three years after closing. The lessee argued that its offer matched the first offer, even though it provided for a smaller purchase price, because its offer eliminated the need for payment of a broker's commission. The appellate court upheld the trial court's finding that the lessee had failed to match the first offer to purchase because the purchase price of the two contracts was substantially different and because there was a substantial difference in the interest that the sellers would receive under the two contracts. Under the first contract the sellers would receive seven percent interest on $700,000 for three years, but under the lessee's contract they would receive seven percent interest on only $500,000 for three years. The Third District Court of Appeal agreed with the trial court that the lessee's offer was not an unconditional acceptance of the right of first refusal and did not match the first offer because the lessee's offer "required a disposition of the property by a different method and under different conditions" that the first offer. Id. at 858.
We do not feel bound by Coastal Bay to find that as a matter of law Hallmark failed to properly exercise its right of first refusal because its offer did not match the McConnohie/Bendon offer. As the court in Coastal Bay noted, one offer to purchase matches another if the essential terms of the offer are identical. Id. at *1050 858.[1] The determination as to whether the essential terms of Hallmark's offer are identical to the essential terms of the McConnohie/Bendon offer requires a determination of factual issues as to the status of the two promissory notes. Hickory Lakes, as the party moving for the summary judgment, did not carry the burden of conclusively establishing the absence of any genuine issue of material fact. See Holl v. Talcott, 191 So.2d 40 (Fla. 1966).
If the two promissory notes had been fully paid, then the offers by Hallmark and McConnohie/Bendon would appear to have been substantially identical, at least insofar as the consideration to be received by Hickory Lakes is concerned. That is, if the notes had been already paid, Hickory Lakes would receive $410,000 under either offer, and delivery to the purchaser by Hickory Lakes of the notes marked paid in full under the McConnohie/Bendon contract would then have been but an incidental aspect of the transaction. On the other hand, if the notes were unpaid, then presumably in order to deliver them marked paid in full under the McConnohie/Bendon offer, Hickory Lakes would have had to first pay off the notes to Housing Investment Corporation. Therefore, assuming the notes to be unpaid, under the McConnohie/Bendon contract Hickory Lakes would receive a net purchase price of $410,000 less the amount paid to Housing Investment Corporation in repayment of the notes. Under the first Hallmark contract, which offered to pay a purchase price of $410,000 less any amount due on the promissory notes, Hickory Lakes would evidently receive a net purchase price identical to that under the McConnohie/Bendon contract because under that contract, as we have noted, Hickory Lakes would, on the face of the transaction, be required to pay to Housing Investment Corporation the balance due under the notes. Similarly, under Hallmark's second contract, which offered a purchase price of $410,000 and acceptance of an assignment of the two promissory notes without recourse, Hickory Lakes would appear to also receive the balance of $410,000 left after paying off Housing Investment Corporation in order to effect the assignment of the notes. Accordingly, under either of Hallmark's offers, it appears that Hickory Lakes would receive the same net purchase price and Hallmark would pay the same amount as under the McConnohie/Bendon contract.
The record shows substantial issues of fact as to whether or not the promissory notes were enforceable for any part of the principal amount. The record indicates that no cash payments on the principal or interest were ever made under either of the two notes. McConnohie and Underberg claim that their obligations under the notes were satisfied by services they provided pursuant to provisions of the four-party agreement. Housing Investment Corporation, however, claims that the notes were at best only partially satisfied.
If the promissory notes were not satisfied, it would appear, as explained above, that the same consideration would be received by Hickory Lakes under either the Hallmark offers or the McConnohie/Bendon offer. Accordingly, it does not appear from the record before us that there was any special, legally cognizable benefit to Hickory Lakes from the McConnohie/Bendon offer which Hickory Lakes would not receive under the Hallmark offer.
In the absence of any proof by Hickory Lakes of a special benefit to them under the McConnohie/Bendon contract, this situation can be distinguished from that in Coastal Bay where the lessee's offer would have resulted in $42,000 less in interest payments to the owner, thus showing a difference in the essential terms of the offers. See also City National Bank of Miami Beach v. Lundgren, 307 So.2d 870 (Fla. 3d DCA 1975), cert. denied, 316 So.2d 286 (Fla. 1976), in which it was found that the holder of the right of first refusal had not tendered an unconditional acceptance of the purchase contract and had not properly *1051 exercised its right of first refusal when its offer, unlike the offer by the third party, did not contain an obligation to pay the real estate broker's commission, thus resulting in a receipt by the seller of a smaller sum of money.
In summary, the offers of Hallmark and McConnohie/Bendon appear to be identical in their essential terms, specifically in the disputed area of consideration, because the net purchase price to be received by Hickory Lakes would appear to be identical under either offer. Although it therefore would appear that Hallmark's offer matches the McConnohie/Bendon offer in its essential terms, the matter is relatively complex and disputed issues of fact remain concerning the status of the promissory notes. Under the circumstances, it appears inappropriate that we direct judgment for Hallmark at this point. The parties should be allowed to show, in light of our foregoing conclusions, why those notes do or do not create a difference in the consideration, monetary or otherwise, to be received under each offer and why there is or is not any legally cognizable benefit to Hickory Lakes under the McConnohie/Bendon contract which it would not receive under the Hallmark contract.
We reverse the summary judgment granted to Hickory Lakes and remand to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
GRIMES, A.C.J., and SCHEB, J., concur.
NOTES
[1] We consider Whyopen v. Via, 443 So.2d 419 (Fla. 2d DCA 1984) to be not inconsistent despite its use of the term "equal" in describing the requisites of a matching offer.