WILLIAM STEIN *vs.* CHALET SUSSE INTERNATIONAL, INC.,
& others
(and a companion case).

Middlesex.   April 11, 1986. — May 9, 1986.

Present: GRANT, KASS, & WARNER, JJ.

*Broker,* Commission. *Contract,* With broker, Performance and breach,
Assignment.

Where an agreement for the purchase and sale of certain real estate provided
that the brokers, who had originally been engaged by the sellers of the
property, would look solely to the buyer for their commission and that
the commission would be due only upon the completion of the sale to
the buyer or his designee and the recording of a deed to the buyer or
his designee, and where, before the purchase was completed, a party
with an antecedent right of first refusal, of which all concerned were
aware, exercised its right by a letter to the sellers stating that it would
purchase the property "on the same terms and conditions" as those set
forth in the purchase and sale agreement and subsequently completed
the purchase of the property on these terms, neither the party exercising
the option nor the sellers were liable to the brokers for their commission.
[178-179]

CIVIL ACTIONS commenced in the Superior Court Department
on October 28, 1983, and January 23, 1984, respectively.

Motions for summary judgment were heard by *Charles R.
Alberti,* J.

*Frank J. Ciano* for Harold L. Kravit.

*W. Bradley Ryan* for William Stein.

*Don M. Kennedy (Mark W. Pearlstein* with him) for Chalet
Susse International, Inc., & others.

*James Verner Moore* for Lionson, Ltd., & others.

GRANT, J. These are separate but consolidated actions
brought in the Superior Court by which two licensed real estate
brokers, William Stein and Harold L. Kravit (plaintiffs), seek
to recover and share in a broker's commission in connection

with the sale of a motel in Newton. The defendants in the action brought by Stein are: Lionson, Ltd. (Lionson), which was the owner and seller of the motel; Chalet Susse International, Inc. (CSI), which held and exercised a right of first refusal with respect to the motel; and Fred B. Roedel and William M. Weaver, Jr., who were the principals of CSI, the assignees of the right of first refusal, and (as trustees) the ultimate purchasers of the motel. The Kravit action was brought against the same defendants, as well as against Richard F. Lion and William C. Johnson, who are the principals of Lionson. The actions were heard and determined on cross motions for summary judgment. The plaintiffs' motions were denied. The defendants' motions were allowed, and the plaintiffs have appealed from the ensuing judgments of dismissal.

The material facts are not in dispute. The right of first refusal was created by and constituted one of the terms of a 1977 licensing agreement between CSI as licensor and Lion and Johnson as licensees. Under the agreement the licensees were granted the right (among others) to use the name "Susse Chalet Motor Lodge" in the operation of the motel. Paragraph 12 of the agreement provided in relevant part: "The [l]icensee shall not sell . . . the [l]icensee's premises in whole or in part without . . . offering the same to the [l]icensor upon the same terms as the [l]icensee shall previously have received as a bona fide written offer from a responsible fully disclosed party . . . ." Lion and Johnson did not own the motel property at the time of the execution of the licensing agreement. They subsequently acquired it in November, 1982, taking a title in the name of Lionson.[1]

In early 1983, Lionson listed the property for sale with the plaintiffs, who were not then aware of the right of first refusal. The plaintiffs produced an offer from one Gerald S. Fineberg to purchase the property for a substantial sum. The circumstances appear to have been such that if Lionson had ac-

---

[1] We do not have all the terms of the licensing agreement. All parties appear to have proceeded on the basis that the right of first refusal was binding on Lionson in addition to Lion and Johnson.

cepted the offer and conveyed the property to Fineberg, it would have been liable to the plaintiffs for a broker's commission of $160,000 in accordance with the rules enunciated in *Tristram's Landing, Inc.* v. *Wait,* 367 Mass. 622, 629-630 (1975), and reiterated in *Capezzuto* v. *John Hancock Mut. Life Ins. Co.,* 394 Mass. 399, 402 (1985). Negotiations commenced between Fineberg and Lionson in the course of which, not later than March 16, 1983, it was disclosed to all concerned (including the plaintiffs) that the property was subject to the aforementioned right of first refusal in CSI. Lionson demanded an additional $200,000.

At some point in the negotiations Fineberg's counsel took the plaintiffs aside (they were not represented by counsel of their own) and persuaded them to accept an arrangement comparable to a novation[2] under which they would, in effect, discharge Lionson from any obligation it might have to pay a commission on a sale, would look solely to Fineberg for such commission, and would accept a reduced commission of $120,000.[3] Fineberg then offered Lionson an additional $40,000 in cash and to assume sole responsibility for the payment of a commission to the plaintiffs. Lionson agreed to Fineberg's proposal, subject to CSI's right of first refusal.

Counsel for Fineberg utilized the 1978 version of the Greater Boston Real Estate Board standard form of purchase and sale agreement in reducing the Fineberg-Lionson agreement to writing. There was no change of substance in ¶ 25 of the form: "The broker(s) named herein join in this agreement and become a party hereto, in so far as any provisions of this agreement expressly apply to (them), and to any amendments or modifications of such provisions to which (they) agree(s) in writing." Paragraph 19 was filled in to read as follows: "A broker's fee for professional services is due from the BUYER to William

---

[2] Compare *Curran* v. *O'Donnell,* 236 Mass. 357, 358-359 (1920). See Restatement (Second) of Contracts § 280 comment d and illustration 2 (1979).

[3] According to Stein's testimony on deposition, counsel for Fineberg said to Kravit that "he didn't think the thing was going to fly unless we agreed to this."

Stein and Harold L. Kravit only in the event the sale herein described is completed, the [p]urchase [p]rice paid at closing in accordance with the terms hereof and the deed to BUYER is recorded." Paragraph 20 read in material part: "The [b]rokers named herein William Stein and Harold L. Kravit . . . agree to look solely to BUYER for the commission." The "BUYER" was defined in ¶ 1 as "Gerald S. Fineberg . . . or his designee." Paragraph 37 referred to the right of first refusal and conditioned Lionson's obligation to close on CSI's not exercising its right of first refusal within thirty days of Lionson's giving it notice of the agreement. The agreement was signed by Fineberg, Lionson and both plaintiffs.

The agreement was executed on May 18, 1983, which was slightly more than two months after the plaintiffs had learned of the right of first refusal. On the same date, the plaintiffs and Fineberg entered into a separate agreement in writing which read in material part as follows: "1. That [the plaintiffs] are the brokers in the transaction; 2. That [the plaintiffs] agree to look solely to the buyer and agree not to assert any claim against the seller for a brokerage commission in connection with the purchase and sale; 3. The brokerage commission payable to [the plaintiffs] shall be $120,000 payable in cash at the closing of the transaction in accordance with the [p]urchase and [s]ale [a]greement;[4] and 4. No portion of the commission shall be deemed earned nor be due or payable until the transaction closes and the [d]eed is recorded in accordance with the terms of the [p]urchase and [s]ale [a]greement." Compare *MacGregor* v. *Labute,* 14 Mass. App. Ct. 203, 205 (1982).

Lionson supplied a copy of the purchase and sale agreement to CSI, which, to the surprise of all concerned, exercised its right of first refusal by a letter of June 22, 1983, to Lion, Johnson and Lionson in which CSI advised that it "[would] purchase the motel property on the same terms and conditions as set forth in the May 18, 1983 [p]urchase and [s]ale [a]greement and [would] complete the purchase by August 1, 1983."

---

[4] The plaintiffs had an agreement between themselves as to how they would share the $120,000.

CSI thereupon assigned its rights to Roedel and Weaver, as trustees. They completed the purchase of the property for the same price and other financial considerations which Lionson had agreed to accept from Fineberg. Nobody has paid the plaintiffs a commission.

The principal contention of the plaintiffs, expressed in various themes, is that CSI should be liable for a commission because it succeeded to Fineberg's position as the purchaser of the property and because, by its letter of June 22, 1983, CSI undertook to purchase the property "on the same terms and conditions as [those] set forth in the . . . [p]urchase and [s]ale [a]greement." This contention throws us back onto the precise language of that agreement and the particular subject that was isolated for separate treatment. All the parties thereto clearly and unambiguously identified the only events in which the plaintiffs would be entitled to a commission, namely, (1) the completion of a sale to Fineberg or his designee in accordance with the terms of the purchase and sale agreement, (2) the payment of the purchase price in accordance with the terms of the agreement, and (3) the recording of a deed to Fineberg or his designee. Those events were echoed in the separate agreement between the plaintiffs and Fineberg which was executed at the same time as the purchase and sale agreement. CSI was acting in its own right and behalf in exercising its antecedent right of first refusal; it was not acting in any sense as a designee of Fineberg. As neither event (1) nor event (3) occurred, there is no basis for fastening liability on CSI or on Roedel and Weaver as the nominees or assignees of CSI. *Creed* v. *Apog,* 6 Mass. App. Ct. 365, 371-172 (1978), modified in another respect, 377 Mass. 522 (1979). Contrast *Kenny* v. *DiCenso,* 10 Mass. App. Ct. 835, 836 (1980); *Leech* v. *Ebers,* 12 Mass. App. Ct. 1004, 1005 (1981).

In our view, this is nothing more than a case in which the brokers deliberately, if inadvisedly, gave up their right to look to the seller for a commission and failed to secure a firm substitute for that right. See *Capezzuto* v. *John Hancock Mut. Life Ins. Co.,* 394 Mass. at 404. That such failure may have been dictated by economic forces which the plaintiffs could

not resist (see note 3, *supra*) is not a matter for judicial concern in the circumstances of this case.[5]

There is no merit to any of the other contentions advanced by the plaintiffs. Those which might otherwise have commanded our attention were properly rejected by the motion judge for the reasons given by him in his careful and comprehensive memorandum of decision.

*Judgments affirmed.*

---

[5] In reaching our conclusions on this aspect of the case we have not overlooked the case of *City Natl. Bank* v. *Lundgren,* 307 So.2d 870 (Fla. Dist. Ct. App. 1975), in which the person who exercised a right of first refusal was held to have assumed the *seller's* liability for a brokerage commission. There is room for doubt whether that case represents the law of Florida. See *Hallmark Builders, Inc.* v. *Hickory Lakes of Brandon, Inc.,* 444 So.2d 1047, 1050, 1051 (Fla. Dist. Ct. App. 1984); *Anderson* v. *Draddy,* 458 So.2d 803, 803-804, 805 (Fla. Dist. Ct. App. 1984); *Lehr* v. *Breakstone,* 472 So.2d 1333, 1335 (Fla. Dist. Ct. App. 1985).