RAYMOND H. REEF & another[1] *vs.* GEORGE J. BERNSTEIN, trustee, & others.[2]

Suffolk.   November 13, 1986. — March 6, 1987.

Present: GREANEY, C.J., PERRETTA, & DREBEN, JJ.

*Real Property,* Sale, Option. *Contract,* Option. *Broker,* Commission.

Where under an instrument that created a right of first refusal permitting purchase of a certain parcel of land, "under the same price and conditions" as those offered to a prospective third-party purchaser, the parties did not contemplate that a broker would be employed when the right was exercised, the amount payable to the seller for the effective exercise of the right did not include the amount of any broker's commission for which the seller would have been liable in the event of sale to a third-party purchaser. [600-604]

CIVIL ACTION commenced in the Superior Court Department on June 12, 1984.

The case was heard by *Thomas R. Morse, Jr.,* J., on a motion for summary judgment.

*W. Bradley Ryan* for the plaintiffs.

*M. Frederick Pritzker* (*Marilyn D. Stempler* with him) for Lisa R. Rosenthal & another.

*Edward E. Kelly* for George J. Bernstein & another.

DREBEN, J. The plaintiffs as buyers entered into a purchase and sale agreement (Reef agreement) with the defendants as sellers for a parcel of land on Canal Street in Boston. The agreement was subject to a right of first refusal held by a tenant of the sellers, the defendant, Robert K. Saffi. Saffi purported to exercise his right of first refusal, and his assignee purchased the property.

[1] Stuart F. Gray.

[2] Shirley M. Bernstein, as trustee of Essgee Trust, Lisa R. Rosenthal, as trustee of Canal 160 Nominee Trust, and Robert K. Saffi.

The plaintiffs seek specific performance of the Reef agreement, claiming that Saffi's exercise was not, as required by his right of first refusal under the lease, "under the same price and conditions" as the Reef agreement. It deviated from that agreement, according to the plaintiffs, both with respect to a broker's commission and an outstanding mortgage. On cross motions for summary judgment, accompanied by a stipulation of facts and relevant documents, a judge of the Superior Court entered judgment for the defendants, concluding that, "in all material aspects the sale consummated between the defendants was 'under the same terms and conditions' as . . . envisioned by [the Reef] agreement." We affirm.

1. *Broker's commission.* The purchase price of the property under the Reef agreement was $909,000. Paragraph nineteen of that agreement provided that a broker's fee of $34,000 "is due from the seller" to the brokers "if, as and when the full purchase price is paid by Buyer to Seller and title to the premises is passed of record pursuant to the terms of this Agreement, but not otherwise in whole or in part."

The purchase and sale agreement with Saffi also provided for a purchase price of $909,000. A "memorandum of understanding" of even date, however, provided that at the closing Saffi would be credited with the sum of $34,000 against the purchase price of $909,000 to enable him to establish an escrow fund to assume the liabilities, if any, of the sellers to the brokers named in the Reef agreement. If the escrow funds were inadequate, Saffi would be responsible for any additional amounts which might be necessary to hold the sellers harmless. If no claim were made by the brokers, or if there were any balance in the escrow account, the remaining sums were to be paid to Saffi.

Relying on several Florida decisions,[3] the plaintiffs claim that the full purchase price and not the amount to be received by the sellers, is the price which Saffi was required to pay.

[3] *Coastal Bay Golf Club, Inc.* v. *Holbein,* 231 So.2d 854 (Fla. App. 3d Dist. 1970). *City Natl. Bank* v. *Lundgren,* 307 So.2d 870 (Fla. App. 3d Dist. 1975). *Anderson* v. *Draddy,* 458 So.2d 803 (Fla. App. 4th Dist. 1984). *Lehr* v. *Breakstone,* 472 So.2d 1333 (Fla. App. 3d Dist. 1985).

They argue that because the balance, if any, of the $34,000 was to be paid to the buyer, rather than to the sellers, Saffi had not complied with the first refusal right under the lease.[4]

We agree with the plaintiffs that if a seller is obligated to pay a brokerage commission and remains liable for the commission after a right of first refusal is exercised, the exercise should include the amount of the commission. See *City Natl. Bank* v. *Lundgren,* 307 So.2d 870, 872 (Fla. App. 3d Dist. 1975); *Foster* v. *Hon,* 482 S.W.2d 139, 143 (Tenn. App. 1970). Where, however, a broker's commission is not due from the seller, the prospective purchaser may not complain that the person holding the right of first refusal did not include payment of an amount equal to the broker's commission in his exercise. *C. Robert Nattress & Associates* v. *Cidco,* 184 Cal. App. 3d 55, 70-73 (1986).

In *Stein* v. *Chalet Susse Intl., Inc.,* 22 Mass. App. Ct. 174 (1986), we looked at the right of first refusal from the vantage point of the broker. In that case a broker sought to recover his commission from the holder of the first refusal right. He claimed the holder should be liable, otherwise it would not be purchasing the property "on the same terms and conditions as [those] set forth in the . . . [p]urchase and [s]ale [a]greement" of the third party. *Id.* at 178. The third party purchaser had agreed to pay a certain price and had also undertaken to pay the broker's commission, thus relieving the seller of that obligation. *Id.* at 176-177. A commission was payable only if title passed to the named purchaser, an eventuality which never came about. The assignees of the first refusal holder "completed the purchase of the property for the same price and other financial considerations" which the seller had agreed to accept from the third-party purchaser but did not pay any commission. *Id.* at 178. In *Stein,* the seller received the same net price as

---

[4] The lease clause provides: "In the event the LESSOR shall sell the building in which the leased premises are located, the LESSEE shall have the right of first refusal. He shall be informed of the prospective sale and its price and terms. He shall inform the LESSOR in or within fifteen (15) days of receipt of such notice to accept the opportunity to buy the said premises under the same price and conditions. Failure of the LESSOR to receive notice of such acceptance shall be deemed a rejection thereof."

he would have received from the third person. We held the broker could not require the holder of the right of first refusal to pay the commission. *Id.* at 178. *Redfield* v. *Estate of Redfield,* 101 Nev. 24, 26-27 (1985), is to the same effect.

In the present case, the third-party purchasers, rather than the broker, are complaining that the holder of the right of first refusal is not meeting the terms of the third-party (Reef) agreement. We turn to that agreement. Since it specifically refers to the written lease, the plaintiffs' rights depend on the meaning of the words there used, namely "under the same price and conditions." In construing those words, the probable intention of the parties to the lease is, of course, a significant guide. See *Shane* v. *Winter Hill Fed. Sav. & Loan Assn.,* 397 Mass. 479, 483 (1986).[5]

The expectation of the parties to the instrument giving rise to the right of first refusal is that the services of a broker will not be needed, and that no broker's commission will be payable. See *Tristram's Landing, Inc.* v. *Wait,* 367 Mass. 622, 629 (1975). This expectation is the same whether the buyer or the seller under the third-party agreement is to pay the commission.

What the seller views as his price is the amount to be received after the deduction of any commission; "his expectation is that the money for the payment of commission will come out of the proceeds of the sale." *Capezzuto* v. *John Hancock Mut. Life Ins. Co.,* 394 Mass. 399, 403 (1985), quoting from *Ellsworth Dobbs, Inc.* v. *Johnson,* 50 N.J. 528, 547 (1967). The tenant, for his part, does not intend that the seller receive

---

[5] Had the right of first refusal been drafted more carefully, the problem, of course, would not have arisen. See, e.g., the clause reproduced in Park & Park, Real Estate Law § 31, at 24 (2d ed. 1981) which, in relevant part, provides:

"1. The said premises described above will not be assignable by the grantors by sale or otherwise in whole or in part to a third party without the same, together with any improvements thereon, being first offered in writing to the grantees, said notice to be addressed to them at _____, at the same net consideration (after deducting commissions payable to a real estate agent if an agent is involved) that the then owner of said premises is then able to realize from a bona fide third party purchaser."

a windfall because the tenant, rather than a third party, is the buyer. He considers that the seller should be put in the same position as if he had accepted the triggering offer.

Unless the language of the first refusal right provides otherwise, we see no reason to construe the agreement in a manner contrary to these normal expectations of the seller and the holder of the first refusal right. Accordingly, we hold that Saffi here met the price called for by the lease.[6]

This is the approach taken in *C. Roberts Nattress & Associates* v. *Cidco,* 184 Cal. App. 3d at 72-73, which held that a right of first refusal was exercised on the "same terms and conditions" as the triggering offer even though the exercise did not include the amount of a broker's commission. The court rejected what it called "the somewhat mechanistic approach" of *Hartmann* v. *Windsor Hotel Co.,* 132 W. Va. 307 (1949), and of *Coastal Bay Golf Club, Inc.* v. *Holbein,* 231 So.2d 854, 857-858 (Fla. App. 3d Dist. 1970), saying:

> "On an objective basis the probable expectations of both the lessor and the lessee were that if the lessee made a proposal to exercise the right of first refusal which was exactly the same in net effect to the lessor as the triggering offer, the right of first refusal would be deemed exercised . . . . [W]hen the only material difference . . . is the amount of the real estate commission payable under the triggering offer . . . , the question . . . whether . . . the exercising offer is on the same terms . . . should be determined on the basis of the reasonable expectations of the parties . . . . [I]t could not reasonably have been anticipated by any party that to meet the [prospective buyer's] offer would require an offer more favorable in

---

[6] If, however, a broker's commission were payable by the seller, because, for example, the broker has specifically provided in the third party purchase and sale agreement that his commission is to be paid if the holder of the first refusal right exercises that right, the price must, as we stated earlier, include that commission. Similarly, the first refusal holder may be required to hold the seller harmless from the claims of a broker by an escrow arrangement or otherwise.

> net effect to the owner than the [prospective buyer's] offer itself."

Contra *Yorkridge Serv. Corp.* v. *Boring,* 38 Md. App. 624, 626 (1978), a case which, without analysis, reaches a contrary result. See also the following Florida case: *Lehr* v. *Breakstone,* 472 So.2d 1333, 1335 (Fla. App. 3d Dist. 1985); but see *Hallmark Builders, Inc.* v. *Hickory Lakes of Brandon, Inc.,* 444 So.2d 1047, 1050, 1051 (Fla. App. 2d Dist. 1984), and *Stein* v. *Chalet Susse Intl., Inc.,* 22 Mass. App. Ct. at 179 n.5.

2. *Outstanding mortgage.* The seller and Saffi agreed that $100,000 be held in escrow until an outstanding mortgage was discharged. The judge concluded, based on the documents, that "such a precaution would have been required to protect the grantees whether the grantees were the plaintiffs or others." This finding, not challenged by the plaintiffs, disposes of their claim.

*Judgment affirmed.*