NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1967-15T2

SETH POLLACK and SP REALTY
ADVISORS, LLC,

    Plaintiffs-Appellants/
Cross-Respondents,

v.

QUICK QUALITY RESTAURANTS,
INC.,

    Defendant-Respondent/
Cross-Appellant.

---

**APPROVED FOR PUBLICATION**

**October 26, 2017**

**APPELLATE DIVISION**

---

Argued September 25, 2017 — Decided October 26, 2017

Before Judges Sabatino, Whipple, and Rose.

On appeal from Superior Court of New Jersey,
Law Division, Bergen County, Docket No.
L-1000-14.

Michael J. Epstein argued the cause for
appellants/cross-respondents (Epstein Law
Firm, PA, attorneys; Mr. Epstein, of counsel
and on the briefs; Michael A. Rabasca, on the
briefs).

John R. Wenzke argued the cause for
respondent/cross-appellants (Lasser Hochman,
LLC, attorneys; Mr. Wenzke, of counsel and on
the brief).

The opinion of the court was delivered by

WHIPPLE, J.A.D.

In this appeal, as an issue of first impression, we are asked to consider whether a tenant exercising a right of first refusal to adopt terms of a sale contract for certain premises is obligated to pay a commission to a third-party broker that secured a prospective buyer. Because there was no contractual relationship here between the tenant and the third-party broker, or other basis to impose liability for the commission, we affirm.

We discern the following relevant facts from the record. Randall Corporation and Garbrook Corporation (the sellers) entered into a twenty-two-year lease with defendant, Quick Quality Restaurants, Inc., at the Butler Plaza Shopping Center (Butler Plaza) commencing December 1, 1994. The lease provided defendant a right of first refusal.

According to the pertinent lease provision, if the sellers received a bona fide purchase offer for Butler Plaza, the sellers were obligated to serve a copy of the proposed purchase contract, with any additional terms, to defendant and afford defendant a limited opportunity to meet such terms. To exercise this right, defendant had ten days to provide the sellers with an unqualified written acceptance, which would operate as the final contract and bind defendant. Defendant had no right under the lease to communicate with the third party. The lease also provided:

> Tenant and landlord each warrant and represent to the other that it has not dealt or negotiated with any real estate broker or salesman in connection with this Lease Agreement. Each party indemnifies and holds harmless the other party from all damages, commissions, legal fees, litigation expenses and other liabilities incurred as a result of a breach of the foregoing warranty and representation by either party.

Plaintiff Seth Pollack is a licensed real estate broker and principal of co-plaintiff SP Realty Advisors, LLC, and had a business relationship with Robert Levi. Levi introduced Pollack to the sellers, who were planning to sell Butler Plaza. During initial talks, the sellers made clear any brokerage commission paid would come from the purchaser.

Plaintiffs and Levi found a potential purchaser, Levin Properties, LLC (Levin). Plaintiffs and a representative for Levin orally agreed Levin would pay plaintiffs a broker's commission of 1.5% of the purchase price. According to Pollack, Levin's representative also agreed to draft a commission agreement and confirmed via email, on April 3, 2013, the broker's commission would be 1.5%.

On June 26, 2013, the sellers and Levin entered into a contract of sale for Butler Plaza for $14,500,000 (the Levin contract). The Levin contract identified Pollack as the broker and specifically stated, "[p]urchaser shall pay a real estate

A-1967-15T2

commission to Broker pursuant to a separate agreement." Additionally, the Levin contract provided the inspection period would begin eleven days following defendant's receipt of the contract if defendant did not exercise its right of first refusal.

On July 10, 2013, Levin's representative sent Pollack a proposed commission agreement, which stated, "[u]ntil this agreement is signed by Levin Properties, . . . it is understood and agreed that it shall have no force and effect." Levin never signed the agreement.

As required by the lease, defendant was provided with a copy of the Levin contract by the sellers' counsel. Levin's and plaintiffs' names were redacted from defendant's copy. Although the Levin contract required the purchaser to pay a real estate commission to the broker pursuant to a separate agreement, no such separate agreement was incorporated into the Levin contract or otherwise provided to defendant. Accordingly, defendant was unaware of plaintiffs' identity and the percentage of the broker's commission. On July 3, 2013, defendant's counsel sent a letter to the sellers' counsel advising him the required due diligence materials were not included with the contract and therefore the ten-day period to exercise the right of first refusal would not commence until the materials were provided.

On July 9, 2013, the sellers' counsel emailed Levin and the sellers, informing them defendant had asked about the broker's commission and inquired whether it should be disclosed to defendant. Defendant's counsel testified that, as part of due diligence, he asked the sellers' counsel about the broker's commission and counsel advised, "Don't worry about it. You don't need to know." The sellers' counsel also informed defendant's counsel that the separate broker's commission agreement "[is] not binding on you." Defendant's counsel then asked the sellers' counsel for the name of the broker, a copy of the brokerage agreement, and the amount of the brokerage fee. The sellers' counsel emailed defendant's counsel stating, "Our purchaser has indicated to us that the commission that they will pay is $217,500 [(1.5%)] of the purchase price."

Later that day, defendant and the sellers agreed defendant had until July 19, 2013 at 5:00 p.m. to exercise the right of first refusal. On July 19, 2013, defendant exercised its right of first refusal, agreeing to be bound by the terms of the Levin contract. The sellers' counsel testified defendant would be obligated to pay the broker's commission because defendant gave an unqualified written acceptance of the terms.

Almost three months later, in October 2013, Pollack called defendant's counsel who was unaware Pollack was the "broker" in

the Levin contract. Defendant's counsel and Pollack had a previous professional relationship. Pollack told defendant's counsel he was now working for a new firm and posed a hypothetical situation, asking for advice. Pollack asked defendant's counsel whether the broker involved in a contract of sale is entitled to a commission when a tenant exercised its right of first refusal contained in the lease. According to defendant's counsel, he then realized Pollack was the unidentified broker and informed him that it was inappropriate for him to pose the hypothetical because of the conflict of interest.

On October 17, 2013, Pollack emailed defendant's counsel and stated:

> I understand the conflict of interest you have with regards to the Butler [Plaza] transaction, however I would like to know if your client intends on paying [the] Broker commission . . . I am entitled to based on . . . my commission agreement with Levin, which is incorporated in the [Levin contract].

Defendant's counsel responded on October 21, 2013, informing Pollack that defendant

> does not recognize your firm as being a broker on the transaction. [Defendant] had a preexisting right of first refusal and no broker was involved in that transaction. We have not been provided with any brokerage agreement and have no knowledge of the "Levin" party that you reference in your email to me.

A-1967-15T2

The sellers and defendant closed on the purchase of Butler Plaza on December 2, 2013. No commission was paid to plaintiffs.

On January 28, 2014, plaintiffs filed a complaint against defendant asserting breach of contract, breach of an implied covenant of good faith and fair dealing, unjust enrichment, quantum meruit, and third-party beneficiary. Plaintiffs asserted defendant's right of first refusal required it to match any and all terms of the Levin contract, including the broker's fees referenced in the contract. Defendant counterclaimed asserting a violation of the Consumer Fraud Act (CFA) N.J.S.A. 56:8-1 to -198.

On August 5, 2015, plaintiffs moved for summary judgment and, on September 11, 2015, defendant cross-moved for summary judgment. The Honorable Brian R. Martinotti, J.S.C., issued an order and a twenty-two page written decision denying plaintiffs' motion, granting defendant's motion, and dismissing defendant's counterclaim. The judge found no signed writing memorializing an agreement between defendant and plaintiffs that required defendant "to comply with a contract it did not intend to become a party to." Additionally, the judge found the statute of frauds barred the enforceability of the unsigned commission agreement against defendant.

The judge found the terms of the separate commission agreement between plaintiffs and Levin were not incorporated into the

contract of sale provided to defendant, nor were they disclosed to defendant when it was provided with a copy of the approved offer. Moreover, plaintiffs were not third-party beneficiaries because defendant never received a copy of the separate commission agreement, did not know the identities of the purchaser or broker until Pollack contacted defendant's counsel months later, and there was never an agreement between plaintiffs and defendant. Additionally, the judge found the redacted information in the Levin contract belied plaintiffs' argument that they were an intended third-party beneficiary.

As to unjust enrichment, the judge found defendant "would have been able to exercise its right upon submission of any buyer's offer accepted . . . regardless of whether that buyer was procured by a broker or not." As such, plaintiffs did not bestow a benefit upon defendant other than that which it had already secured for itself. Lastly, the judge dismissed plaintiffs' arguments on quantum meruit because they had not established defendant knew Pollack expected defendant to pay him.

As to defendant's claim under the CFA, the judge found plaintiffs made no material misrepresentations or omissions to induce defendant to purchase Butler Plaza and dismissed the counterclaim. Plaintiffs and defendant both appealed.

On appeal, plaintiffs argue the trial court should have found they were third-party beneficiaries of the right of first refusal. Plaintiffs also assert defendant breached an implied covenant of good faith and fair dealing, that their claims were not barred by the statute of frauds, and they are entitled to recover under a theory of quantum meruit.

When reviewing a trial court's grant of summary judgment, we are "bound by the same standard as the trial court under Rule 4:46-2(c)." State v. Perini Corp., 221 N.J. 412, 425 (2015) (citations omitted). We "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Ibid. (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "To the extent that the grant or denial of summary judgment is based on an issue of law, we owe no deference to an interpretation of law that flows from established facts." Ibid. (citing Town of Kearny v. Brandt, 214 N.J. 76, 92 (2013)).

## A.

For the same reasons given by the trial judge, we reject plaintiffs' argument they were third-party beneficiaries. The

sellers and Levin may have intended Pollack to benefit from the Levin contract because he was specifically identified as the "broker." However, the Levin contract did not bind defendant to the separate commission agreement. Plaintiffs argue the court's focus on their lack of involvement with defendant's lease was erroneous and had no bearing on their status as a third-party beneficiary. We disagree.

To determine whether a party is in fact a third-party beneficiary, the court must "focus[ ] on whether the parties to the contract intended others to benefit from the existence of the contract, or whether the benefit so derived arises merely as an unintended incident of the agreement." Broadway Maint. Corp. v. Rutgers, State Univ., 90 N.J. 253, 259 (1982). Therefore, "[t]he determining factor as to the rights of a third-party beneficiary is the intention of the parties who actually made the contract." Ibid. (citation omitted). The parties who made the contract are the ones who agreed upon the terms and create the rights and obligations that come from the contract. Ibid.

Ultimately, the "real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts; and the fact that such a benefit exists or that a third party is named, is merely evidence of this intention." Ibid. If there was no intention that a third person

10                                                              A-1967-15T2

would receive a benefit from the contract, "then the third person is only an incidental beneficiary, having no contractual standing." Ibid. The contract need not specifically identify the plaintiff, as long as the "pertinent provisions of the contract and the surrounding circumstances" demonstrate the parties intended the plaintiff to receive a direct benefit from the contract. Model Jury Charge (Civil) § 4.10B "Third Party Beneficiary" (2009). The question here is not whether a broker could ever be a third-party beneficiary; it is whether these plaintiffs are third-party beneficiaries of this contract between the sellers and defendant.

The sellers and Levin accounted for plaintiffs' services when they executed the Levin contract, listing plaintiffs as the broker and tasking Levin's representative with preparing a separate written commission agreement. However, the Levin contract and the separate commission agreement were not finalized, because defendant exercised its right of first refusal. The Levin contract, when provided to defendant, was redacted and when defendant sought information regarding the broker, the sellers did not disclose it. Additionally, defendant's 1994 lease agreement with the sellers expressly excluded brokerage commissions.

There was never any manifestation after the 1994 lease agreement that plaintiffs, or any broker for that matter, would

receive a direct benefit. As such, defendant did not intend for plaintiffs to receive a direct benefit from the contract between the sellers (defendant's landlord) and itself. Defendant's right of first refusal was not contingent upon a broker's involvement in procuring a potential purchaser. The right of first refusal, instead, was contingent upon the seller's receiving a bona fide offer for the property, regardless of how the potential purchaser was procured.

We also reject plaintiffs' argument that the trial judge erred by ignoring the existence of a valid commission agreement with Levin because it was never executed. The separate commission agreement, which Levin drafted, stated "[u]ntil this agreement is signed by Levin Properties, . . . it is understood and agreed that it shall have no force and effect." We concur with the trial judge.

B.

We turn to plaintiffs' argument they were entitled to a commission by virtue of the right of first refusal in the lease. A right of first refusal "limits the right of the [landlord] to dispose freely of his property by compelling him to offer it first to the party who has the first right to buy." St. George's Dragons, LP v. Newport Real Estate Grp., LLC, 407 N.J. Super. 464, 482 (App. Div. 2009) (quoting Mazzeo v. Kartman, 234 N.J. Super.

12

223, 229 (App. Div. 1989)).  The right of first refusal depends on how the parties decide to structure it.  <u>Ibid.</u>  Here, the right was structured in contemplation of "a bona fide third-party offer as the triggering event."  <u>Ibid.</u> (quoting <u>Mazzeo</u>, <u>supra</u>, 234 <u>N.J. Super.</u> at 229).

We construe a right of first refusal provision under the same rules of construction as any other type of contract.  <u>Ibid.</u>  We "ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain."  <u>Celanese Ltd. v. Essex Cty. Imp. Auth.</u>, 404 <u>N.J. Super.</u> 514, 528 (App. Div. 2009).  Where the terms of a contract are clear, we enforce the contract as written and ascertain the intention of the parties based upon the language.  <u>CSFB 2001-CP-4 Princeton Park Corp. Ctr., LLC v. SB Rental I, LLC</u>, 410 <u>N.J. Super.</u> 114, 120 (App. Div. 2009).

To establish a breach of contract claim, plaintiffs must prove: the parties entered into a contract, containing certain terms; plaintiffs performed what was required under the contract; defendant did not fulfill its obligation under the contract; and defendant's breach caused a loss to plaintiffs.  <u>Globe Motor Co. v. Igdalev</u>, 225 <u>N.J.</u> 469, 482 (2016) (citing <u>Model Jury Charge (Civil)</u> § 4.10A "The Contract Claim — Generally" (May 1998)).

13

Plaintiffs bear the burden of proving each element by a preponderance of the evidence. Ibid.

"[W]hen a broker[,] who had been duly authorized by the owner to find a buyer for his property[,] produced a willing and able purchaser who entered into a contract to buy on terms agreeable to the owner, the broker has fulfilled his undertaking" and is entitled to a commission. Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 543 (1967). As for a broker's right to receive a commission when a tenant exercises the right of first refusal, plaintiffs have provided no compelling precedent either from New Jersey or elsewhere to support this claim.

Case law from other jurisdictions has addressed this issue. In Fallenius v. Walker, 787 P.2d 203, 205-06 (Colo. App. 1989), the Colorado Court of Appeals found the purchaser was required to pay the broker's commission because it was included in the contracting price, and not doing so would violate the terms of the right of first refusal provision requiring the purchaser to accept all contractual terms. Ibid. Fallenius is not factually analogous here, however, because the Levin contract did not include the broker's commission in the contracting price. Indeed, the contract specifically stated the purchase price was $14,500,000 and the broker's commission would be determined in a separate agreement.

In City National Bank v. Lundgren, 307 So. 2d 870, 972 (Fla. Dist. Ct. App. 1975), the Florida appellate court held a purchaser exercising a right of first refusal, who was aware of the obligation to pay the broker, could not unconditionally exercise the right of first refusal and opt out of the obligation to pay the broker.  Here, by contrast, the contract of sale did not require defendant to pay plaintiffs.

Lastly, plaintiffs cite to Simmons v. Plummer, 120 N.M. 481, 483-84 (1995), which found a broker was entitled to a commission despite a party's exercise of the right of first refusal because the broker procured a willing and able potential purchaser.  There, however, the seller was obligated to pay the commission, not the third party who exercised the right of first refusal.  Ibid.

The trial judge found Stein v. Chalet Susse International, Inc., 492 N.E.2d 369 (Mass. App. Ct. 1986), more persuasive for the proposition that a holder of a right of first refusal is not obligated to pay a broker's commission when it was the third-party purchaser who agreed to pay the commission at the close of the purchase.  In Stein, a broker sought to recover a broker's commission from the holder of the right of first refusal.  Id. at 369-70.  The triggering event for the right of first refusal was a "bona fide written offer from a fully disclosed party."  Id. at 370.  The broker claimed the right holder was liable because he

15                    A-1967-15T2

succeeded the third-party purchaser's position who agreed to a certain price and promised to pay a commission at the completion of sale. Id. at 371-72. Because the sale was never completed between the broker and the third-party purchaser, the court found the language of the agreement controlled and the broker was only entitled to a commission at the close with the third-party purchaser. Ibid. Additionally, the court stated it was the brokers who deliberately "gave up their right to look to the seller for a commission and failed to secure a firm substitute for that right." Id. at 372.

While not binding on this court, Stein is instructive. Like the broker in Stein, plaintiffs deliberately relinquished the right to seek a commission from the sellers and negotiated with Levin to receive a commission, while aware of defendant's right of first refusal. The contract provided to defendant did not define plaintiffs as a broker, nor was any commission agreement incorporated therein. Additionally, the commission agreement, which was not signed by Levin, expressly stated the commission would be paid upon the close of title under the terms of the contract made between the sellers and Levin. As Levin and the sellers never closed on the sale of Butler Plaza, plaintiffs are not entitled to a commission.

Plaintiffs argue that when defendant exercised the right of first refusal and entered into the contract, it agreed to be bound by the obligations set forth in the Levin contract, including the obligation to enter into a separate agreement with plaintiffs to pay the broker's commission. Therefore, plaintiff's claim defendant breached the contract by not entering into the separate agreement. We stated in St. George's Dragons, supra, 407 N.J. Super. at 483, any ambiguities in the contract must be construed in favor of the non-drafting party.

Construing the contractual ambiguities in favor of the non-drafting party, defendant did not breach the contract. Levin agreed to pay $14,500,000 and to enter into a separate agreement with the plaintiffs on June 26, 2013. The trial judge found the July 10, 2013 commission agreement had no force or effect because it was never signed and expressly made plaintiffs' commission payable upon the closing of title of the contract between sellers and Levin. Because the closing of title never occurred between the sellers and Levin, plaintiffs are not entitled to a commission.

The trial judge correctly applied St. George's Dragons, supra, 407 N.J. Super. at 483-85, because the holder of the right of first refusal must accept the terms and conditions of the third-party offer only if the contract is unambiguous. There, we held an ambiguously worded contract did not demonstrate the parties

17

intended the holder to pay the commissions in addition to matching the third-party offer. Id. at 485. Here, the ambiguous wording in the Levin contract, requiring purchaser to pay a "broker" a commission pursuant to a separate agreement not incorporated into the contract, creates no inference that defendant is obligated to pay plaintiffs' commission.

C.

Plaintiffs' other theories of recovery are also unavailing. In every contract in New Jersey there is the implied covenant of good faith and fair dealing, Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001), to which every party to a contract is bound. Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224 (2005). While this covenant "cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term." Wilson, supra, 168 N.J. at 244. The covenant requires that parties to a contract "refrain from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive' the benefits of the contract." Brunswick Hills Racquet Club, Inc., supra, 182 N.J. at 224-25 (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965)).

A party who claims there has been a breach of this covenant must provide proof of "bad motive or intention." Id. at 225. The party must also "provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." Ibid. (citing 23 Williston on Contracts § 63:22 at 513-14 (Lord ed. 2002)).

Plaintiffs argue defendant acted with bad motives when it inquired as to the amount of the commission, but then made no further inquiries. But the record demonstrates defendant was unaware of plaintiffs' identity when it signed the contract. Defendant asked the sellers for information about the broker and the commission price because the name of the broker was redacted and there was supposed to be a separate commission agreement, which was not part of the contract provided to defendant. Pollack did not attempt to contact defendant at the time the contract was signed. Rather, defendant did not learn of plaintiffs' involvement as a broker for the sellers until the phone call to defendant's counsel in October.

Defendant did not act in bad faith, denying plaintiffs' the benefit of the bargain originally intended by the parties as defendant did not know of plaintiffs' existence or involvement. Plaintiffs were not listed on the contract and the sellers, the

A-1967-15T2

other party to the contract, never disclosed plaintiffs' identity or their role in the sale of Butler Plaza to defendant. Therefore, defendant did not breach the implied covenant of good faith and fair dealing because plaintiffs were never intended to benefit from the contract between the sellers and defendant.

D.

We also find no merit in plaintiffs' argument that the trial court improperly barred their claims under the statute of frauds. Plaintiffs contend that the acceptance of the contractual terms required defendant to execute a separate written broker's commission agreement. Pursuant to the statute of frauds, N.J.S.A. 25:1-16(b) provides:

> [A] real estate broker who acts as agent or broker on behalf of a principal for the transfer of an interest in real estate . . . is entitled to a commission only if before or after the transfer the authority of the broker is given or recognized in a writing signed by the principal or the principal's authorized agent, and the writing states either the amount or the rate of commission.

A broker will only be entitled to a commission pursuant to an oral agreement if:

> within five days after making the oral agreement and before the transfer or sale, the broker serves the principal with a written notice which states that its terms are those of the prior oral agreement including the rate or amount of commission to be paid[.]

[<u>N.J.S.A.</u> 25:1-16(d)(1).]

"[S]trict compliance with the statute of frauds is essential for a broker to recover a commission for the sale of real estate." <u>C&J Colonial Realty v. Poughkeepsie Sav. Bank</u>, 355 <u>N.J. Super.</u> 444, 473 (App. Div. 2002), <u>certif. denied</u>, 176 <u>N.J.</u> 73 (2003). Our courts disapprove of business practices where brokers rely on the "hope" that a commission "'will be voluntarily paid even though there is no legal obligation to do so,' and their wish 'to avoid the possibility of the refusal of an owner to sign at the outset a document of authority the full import of which the latter may not be sure.'" <u>Coldwell Banker Commercial/Feist & Feist Realty Corp. v. Blancke P.W. LLC</u>, 368 <u>N.J. Super.</u> 382, 392 (App. Div. 2004) (quoting <u>McCann v. Biss</u>, 65 <u>N.J.</u> 301, 308 (1974)).

The statute of frauds may be satisfied when the property, seller, broker, and price is identified, even if the exact amount of the commission is not listed as long as the "proposal which states a net price to the owner or that the purchaser is to pay the broker's commission is uniformly held to comply with the statute." <u>Stanchak v. Cliffside Park Lodge, L.O. of M., Inc.</u>, 116 <u>N.J. Super.</u> 471, 477-78 (App. Div. 1971). In order to satisfy the statute of frauds, the writing must signify or "fairly" imply the broker is selling the property on behalf of the owner. <u>Id.</u> at 478.

Here, no written broker's commission agreement was in effect between any of the parties. The separate commission agreement drafted by Levin specifically stated until it was mutually signed, it "shall have no force and effect." Only Pollack signed the separate commission agreement; Levin never signed it. Accordingly, while defendant may stand in the shoes of Levin by adopting all of the terms in the contract of sale, the separate commission agreement was not part of it.

While defendant was informed that the prospective purchaser would pay a commission, there was never a suggestion that defendant owed plaintiffs for the broker's commission. Contrary to plaintiffs' claims, defendant did not refuse to comply with the contract. Defendant attempted to obtain the information about the broker's commissions but was told it would not apply. The property, seller, and price were identified in the contract, but the broker and the broker's commission was not; therefore, plaintiffs did not strictly comply with N.J.S.A. 25:1-16. See C&J Colonial Realty, supra, 355 N.J. Super. at 473; Stanchak, supra, 116 N.J. Super. at 477-78.

There was no signed written agreement between plaintiffs and defendant, which required defendant to pay 1.5% of the purchase price in commission to plaintiffs. Therefore, the trial judge did not err in finding "[a]bsent a signed writing memorializing an

22

agreement between [defendant] and [plaintiff] Pollack, he may not require [defendant] to comply with a contract it did not intend to become a party to."

We also reject plaintiffs' assertion that the oral agreement between themselves and Levin for 1.5% of the purchase price, confirmed via email to defendant, binds defendant. Defendant was never a party to the oral agreement between Levin and plaintiffs. Additionally, when plaintiffs became aware defendant exercised its right of first refusal, plaintiffs did not serve notice upon defendant of the terms of the oral agreement. See N.J.S.A. 25:1-16(d)(1). No agreement complied with N.J.S.A. 25:1-16(b) or N.J.S.A. 25:1-16(d)(1).

E.

Plaintiffs' quantum meruit argument that defendant was unjustly enriched is also devoid of merit. In order to recover under a theory of quantum meruit, plaintiffs must establish: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." Starkey v. Estate of Nicolaysen, 172 N.J. 60, 68 (2002).

Plaintiffs argue Pollack performed extensive brokerage services in good faith, procured Levin as the purchaser of Butler

23                                              A-1967-15T2

Plaza, Levin accepted the services, plaintiffs expected to be paid, and Levin agreed to pay Pollack 1.5% of the sale price, which was the reasonable value of the services provided.

However, plaintiffs, did not perform services for defendant's benefit. The benefit received by defendant, the ability to exercise the right of first refusal, was obtained through defendant's own negotiations in 1994, and paid for through a higher rent. Plaintiffs had no involvement in the 1994 lease agreement and cannot now argue Pollack bestowed a benefit, by his procurement of Levin as a potential purchaser of Butler Plaza, which unjustly enriched defendant.

## II.

In its cross-appeal, defendant argues the trial judge erred in finding plaintiffs did not violate the CFA, and should have awarded it attorney's fees. Because plaintiffs did not make any knowing misrepresentations that induced defendant to purchase Butler Plaza, the trial judge correctly found defendant's CFA counterclaim was without merit.

The CFA was enacted in order to address "fraudulent practices in the marketplace and deter such conduct by merchants." Thiedemann v. Mercedes-Benz USA, 183 N.J. 234, 245 (2005). The CFA protects the public, even if the merchant has acted in good faith. Gennari v. Weichert Co. Realtors, 288 N.J. Super. 504, 533

(App. Div. 1996). Specifically, it was designed "to protect the public from sharp practices and dealings in the marketing of merchandise and real estate which could victimize the public by luring the consumer into a purchase through fraudulent, deceptive, or similar kinds of selling or advertising practices." Ibid. (citations omitted).

The CFA provides a cause of action to

> [a]ny person who suffers an ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act[,] . . . may bring an action . . . in any court of competent jurisdiction.
>
> [N.J. Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 12 (App. Div.), certif. denied, 178 N.J. 249 (2003) (citing N.J.S.A. 56:8-19).]

To establish a claim under the CFA, plaintiffs must prove: (1) unlawful conduct by defendant; (2) an ascertainable loss on the part of plaintiffs; and (3) a causal relationship between defendant's unlawful conduct and plaintiffs' ascertainable loss. Id. at 12-13.

The CFA sets forth three general categories of unlawful conduct: affirmative acts; knowing omissions; and regulatory violations. Thiedemann, supra, 183 N.J. at 245. While "[a] practice can be unlawful even if no person was in fact misled or

deceived," the determination will turn on whether there was "[t]he capacity to mislead." Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994).

Defendant argues plaintiffs violated the Real Estate Brokers and Salesman Act (the Act), N.J.S.A. 45:15-1 to -42. The Act was designed to "protect consumers by excluding undesirable, unscrupulous and dishonest persons . . . from the real estate business." Sammarone v. Bovino, 395 N.J. Super. 132, 138 (App. Div.), certif. denied, 193 N.J. 275 (2007). N.J.S.A. 45:15-1 requires a real estate broker to be licensed and N.J.S.A. 45:15-3.1 states that a licensed real estate broker may pay a referral fee or commission to a person not licensed in New Jersey, as long as that person is a licensed real estate broker in another jurisdiction.

Defendant contends plaintiffs violated the Act because Pollack initially agreed to split the broker's commission with Levi, satisfying the first element of a CFA claim. Levi was not a licensed broker in any jurisdiction, and was not authorized to receive a real estate broker's commission. However, when Pollack learned that Levi did not have a real estate license, he and Levin informed Levi they could not split the commission with him. Accordingly, plaintiffs did not violate N.J.S.A. 45:15-3.1. Additionally, neither plaintiffs nor Levi contacted defendant

until well after defendant exercised its right of first refusal. Consequently, the record demonstrates there were no material misrepresentations which could have induced defendant into purchasing Butler Plaza.

Defendant also argues plaintiffs' attempt to collect a commission from defendant violated the statute of frauds and attempting to collect a commission without an agreement was an "unconscionable commercial practice" in violation of the CFA. Asserting there was an "ascertainable loss," defendant argues it paid an additional $2,946 in closing costs for counsel to review plaintiffs' commission claims. Here, defendant has not established unlawful conduct by plaintiffs. Plaintiffs did not induce defendant to exercise its right of first refusal by a misrepresentation or knowing omission, especially since defendant was unware of plaintiffs' involvement as brokers, and Levi's uncompensated initial role. Therefore, defendant has not established a claim under the CFA, and the trial judge correctly dismissed defendant's counterclaim.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1967-15T2